669 So.2d 1090 (1996)
Carlton WILLIS, Appellant,
v.
The STATE of Florida, Appellee.
No. 94-2951.
District Court of Appeal of Florida, Third District.
March 13, 1996.
*1091 Bennett H. Brummer, Public Defender and Julie M. Levitt, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Doquyen T. Nguyen, Assistant Attorney General, for appellee.
Before JORGENSON, LEVY and GREEN, JJ.
GREEN, Judge.
Carlton Willis appeals his conviction for robbery after a jury trial. We agree with Willis that he was denied a fair trial where a police officer testifying for the State impermissibly suggested to the jurors that Willis was known to the police by virtue of his involvement in other criminal incidents and where the prosecutor, during closing argument, suggested that one of Willis' alibi witnesses was not to be believed because the witness was not immediately listed on the defense's pretrial witness list. Because the theory of the defense in this case was that of *1092 misidentification and alibi, and the State's sole identification witness gave conflicting descriptions of the assailant, we are unable to conclude beyond a reasonable doubt that the cumulative effect of these errors did not contribute to the guilty verdict. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). We therefore reverse and remand for a new trial.
The victim, Linda Johnson, testified that on December 27, 1993, at about 6:30 a.m. her purse was snatched as she was walking her usual route to work at a laundromat. She thereafter ran to work and telephoned the police who arrived within minutes. She initially described her assailant to the police as a 6'2" tall black male who weighed 200 pounds. She described him as wearing a brown shirt, brown pants, a blue jacket, and a brown hat. No arrest was immediately made at the time. Ms. Johnson further testified that on January 7, 1993, she spotted Willis in the parking lot across from her place of employment and informed her manager that Willis was the person who had robbed her. Willis was wearing a blue jacket at the time. The police were called and Willis was arrested and transported to the police station. There, the police photographed Willis. Ms. Johnson was then brought to the police station and shown the picture. She identified Willis as the robber.
Ms. Johnson admitted that after Willis' arrest, one of the arresting officers[1] informed her that Willis' height was approximately 5'8" or 5'9"[2] and that the height she initially gave was wrong. During her pretrial deposition taken on February 23, 1994, Ms. Johnson described the robber as a "short black guy whose height was between 5'3" and 5'4".[3]
As part of its case in chief, the State further called officer Thomas Simmons, one of the arresting officers. On cross examination, officer Simmons testified that Willis had been wearing a jacket at the time of arrest but it did not appear on the picture shown to the victim for identification purposes. Defense counsel inquired about the missing jacket:
[Defense Counsel]: Where was the jacket?
[Officer Simmons]: I don't know.
[Defense Counsel]: Was it with him when he was arrested?
[Officer Simmons]: I am sorry, I may have gotten this confused with another incident that happened as far as that. But we have had several contacts with this person. Maybe I am mistaken on that.
The defense moved for a mistrial at sidebar but the same was denied. Later on redirect by the State, the officer was again questioned about the missing jacket:
[Prosecutor]: Officer is it common practice to have someone to ask you if he could keep his jacket?
[Officer Simmons]: Yes, that is his property.
[Prosecutor]: What about weapons or anything like that?
[Officer Simmons]: Oh, I was a little confused because we have several pictures of him involving this.
[Prosecutor]: Is it possible the jacket was taken away?
[Officer Simmons]: It possibly could have been another incident. There are so many pictures it could have been another one.
[Prosecutor]: Thank you, sir.

*1093 [Defense Counsel]: I have no questions but obviously I renew my motion.
[Court]: Okay, same ruling.
When the State rested, the defense called two alibi witnesses, one of whom was Debra Willis, the defendant's estranged wife. Mrs. Willis testified that on the date of the robbery, she and the defendant were separated and that he was staying with his mother. She further testified that on that date, the defendant telephoned her between 6:00 a.m. and 7:00 a.m. from his mother's residence. She stated that she was able to confirm that the defendant was calling from his mother's phone by using the "Star-69" return-call phone feature.
During closing argument, the State suggested to the jury that Mrs. Willis' alibi testimony was not credible because she was not listed as a witness until four months after the defendant was arrested:
Was the witness straightforward in answering the attorney's questions. Well, I tried to be as direct as I could with Ms. Willis and I kept asking her over and over again, when did you find out about this incident. It supposedly occurred on 12/27/93 at 6:30 in the morning. There was a reason for that because shouldn't a concerned wife go to the police or go to lawyer and say listen, he was home. But she wasn't listed as a witness until four months later.
The jury found Willis guilty as charged and he was sentenced as a habitual offender to 20 years in prison with a mandatory minimum term of 10 years, followed by five years of drug offender probation.

I. IMPROPER POLICE TESTIMONY
Willis' first point on appeal is that his motion for a mistrial should have been granted where Officer Simmons' testimony impermissibly suggested to the jury that Willis had had prior criminal contacts with the police. Willis asserts that such testimony was prejudicial and tantamount to "Williams Rule"[4] evidence of other crimes under section 90.402, Florida Statutes (1993) and was impermissible where the State failed to give prior notice of its intent to rely upon the same.[5]
Generally speaking, "[s]imilar fact evidence is admissible if relevant to a fact in issue even though it also points to commission of a separate crime." State v. Vazquez, 419 So.2d 1088, 1090 (Fla.1982) (citing Williams). However, we have said that "evidence of any crime committed by a defendant, other than the crime or crimes for which the defendant is on trial, is inadmissible in a criminal case where its sole relevancy is to attack the character of the defendant or to show the defendant's propensity to commit crime." Vazquez v. State, 405 So.2d 177, 179 (Fla. 3d DCA 1981), approved in relevant part, quashed in part, 419 So.2d 1088 (Fla.1982). "A motion for mistrial almost always lies upon the introduction of such evidence at trial, and the error in denying same necessarily constitutes reversible error." Id.
We find in the instant case that Willis was unduly prejudiced by the police officer's gratuitous testimony that Willis had previous contacts with the police in other "incidents." Hardie v. State, 513 So.2d 791 (Fla. 4th DCA 1987), rev. denied, 520 So.2d 586 (Fla.1988). Given the context within which these statements were made, we cannot agree with the State that these statements were innocuous enough for the jury to reasonably conclude that Willis' prior contacts with the police were as a 1) confidential informant; 2) former police officer; or 3) personal acquaintance. The impermissible testimony arose out of questioning about a post arrest photograph taken of Willis by the police. For the officer to tell the jury that he may have confused this photograph with other photographs taken of Willis in other incidents logically suggests that any other photographs *1094 were taken post arrest as well. The evidence of other arrests in this setting was thus clearly impermissible. Hardie, 513 So.2d at 793-94; see also Nordelo v. State, 603 So.2d 36, 38 (Fla. 3d DCA 1992) (holding error the admission of officer's testimony about subsequent unrelated car chase, but also finding the mistake harmless under the circumstances); Jackson v. State, 598 So.2d 303 (Fla. 3d DCA 1992) (reversing conviction where police officer revealed that defendant had "an arrest record and was recently released from prison"); cf. Walker v. State, 642 So.2d 605 (Fla. 1st DCA 1994) (reversing where prosecutor asked defendant, over objection, if he had ever had any problems with law enforcement, defendant said no, and prosecution brought in evidence of such an incident).

II. IMPROPER PROSECUTORIAL ARGUMENT
We further find the prosecutor's attack on the credibility of an alibi witness on the basis that the witness was not immediately listed on the defense's witness list to be improper as well. The purpose of closing argument is solely to afford the attorneys one final opportunity to argue the facts in evidence and/or reasonable inferences to be drawn therefrom. E.g., Jones v. State, 612 So.2d 1370 (Fla.1992), cert. denied, ___ U.S. ___, 114 S.Ct. 112, 126 L.Ed.2d 78 (1993); Robinson v. State, 610 So.2d 1288 (Fla.1992); cert. denied, ___ U.S. ___, 114 S.Ct. 1205, 127 L.Ed.2d 553 (1994); Bertolotti v. State, 476 So.2d 130, 134 (Fla.1985). Moreover, Willis correctly points out that the decision of whether or when to list a particular witness on a pretrial witness list is beyond the control of the witness. Therefore, the credibility of a witness cannot properly be assailed at any stage of a proceeding on the basis of a delayed listing of the witness.
The State having been the beneficiary of the foregoing error, has the burden of demonstrating beyond a reasonable doubt that the cumulative effect of this error did not contribute to the guilty verdict. DiGuilio, 491 So.2d at 1139. We conclude that the State cannot sustain its burden here. The State's evidence in this case was anything but overwhelming. Its entire case rested solely upon the credibility of the victim and her description of her assailant. Since we can only properly characterize this case as "close," we cannot find the errors complained of to be harmless. Therefore, we must reverse the robbery conviction and remand for a new trial.
Reversed and remanded.
NOTES
[1] The prosecutor inquired of the officer at trial as follows:

[Prosecutor]: At any point did you inform her [victim] that she had to get the height right on the individual you had in custody because it was different that the one she gave?
[Officer]: Yes, I talked to her about that.
[Prosecutor]: Did you tell her that the case was going to fall apart?
[Officer]: I told her that it could be a problem later on as far as identification went.
* * * * * *
[Prosecutor]: Did you tell her to change her testimony so the case could stay alive?
[Officer]: I told her to think about the height. We had some discussions about that and I discussed the discrepancies of what she told the original officer, Officer Fernandez and the fact that the person now in custody was a couple of inches smaller than what she had said originally.
[2] At trial, she attributed the discrepancy in her description to her being upset and hysterical.
[3] Willis' actual height is between 5'9" and 5'10".
[4] See Williams v. State, 110 So.2d 654 (Fla.), cert denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).
[5] The record of sidebar conference is clear that the State had not planned to elicit such information and that it was clearly an unsolicited, spontaneous response from the witness:

[Prosecutor]: "Judge if I could begin before Ms. Sisselman [defense counsel], I instructed the officer very clearly."