987 So.2d 822 (2008)
Armando ALCANTAR, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-5084.
District Court of Appeal of Florida, Second District.
August 15, 2008.
*823 Lee Hollander of Law Offices of Hollander and Hanuka, Naples, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Cerese Crawford Taylor, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Armando Alcantar appeals a judgment for trafficking in cocaine and sentence of five years' imprisonment. At trial, the State's evidence against Mr. Alcantar relied heavily upon the testimony of an undercover officer who was not personally familiar with Mr. Alcantar but identified him from a single photograph as the person who sold him cocaine. Law enforcement did not arrest Mr. Alcantar at the time of the transaction; he was arrested approximately eight months later. Because the trial court permitted the State to present inadmissible hearsay and improper or irrelevant character evidence to buttress *824 the undercover officer's identification, we reverse the judgment and remand for a new trial.
In spring 2006, an undercover officer from the Collier County Sheriff's Office was working with a confidential informant who indicated he could set up a controlled purchase of drugs in Immokalee. On March 24, the officer met with the confidential informant and a man the officer later identified as Mr. Alcantar. According to the officer, Mr. Alcantar indicated he did not have the drugs necessary to complete the sale at that time. Thereafter, however, late in the evening of April 7 the confidential informant and the officer were able to meet with the same person and purchase approximately forty grams of cocaine.
The identification of the confidential informant was never disclosed; thus, the confidential informant did not testify at trial. The undercover operation was supervised by another officer, but that officer did not witness the transaction. This second officer monitored an audio transmission of the transaction for safety purposes, but the transmission was not recorded. Although the officers generally described the vehicle the suspect arrived in as a red, smaller-SUV-type vehicle, or a dark-colored truck, there was no information taken regarding the tag number or registration of that vehicle and thus no evidence connecting Mr. Alcantar to the vehicle. The transaction was arranged via cellular telephone, but there was no testimony or other evidence linking Mr. Alcantar to the numbers called or the calls received in response. Although the officer purchased the cocaine using $1000 in marked and recorded bills, that currency was never recovered.
The undercover officer was not familiar with Mr. Alcantar and had no other contact or experience with Mr. Alcantar other than these events. The officer testified he knew Mr. Alcantar had a "street name" of "Snuff," but it is unclear how the officer knew that name or when he learned it. Sometime after the transaction, the undercover officer was shown a single photograph and he identified the person in the photograph as the person who sold him the drugs. That photograph was one of Mr. Alcantar. Although the transaction occurred in April 2006, for reasons not revealed in this record law enforcement did not arrest Mr. Alcantar until January 2007.
In light of this evidence, the critical issue at trial was identity. Mr. Alcantar's defense was specifically one of mistaken identity. It is in this context that two harmful errors occurred.
As stated above, this transaction was monitored by a second officer via audio transmission. This second officer assisted in the set-up of the transaction and in the recovery of the purchased drugs, but he did not witness the transaction or see the person who sold the drugs. When this officer testified at trial, however, he was permitted to testify over objection that he personally knew Mr. Alcantar, whose street name was "Snuff," for "all [of] my law enforcement career" of twenty-three years in Immokalee. This officer then identified Mr. Alcantar in court.
On cross-examination of this officer, defense counsel attempted to emphasize that there was no evidence, other than the testimony of the officer who participated in the transaction, that would point to Mr. Alcantar as the perpetrator. Defense counsel, perhaps inartfully, asked, "What else proves identity other than the testimony of [the undercover officer]?" When pressed further on this issue, the second officer began, "And the informant in this case saying that [Alcantar] ." Defense counsel immediately interjected an objection *825 to the witness continuing this answer. The trial court overruled the objection, however, responding, "You opened the door. Overruled. You may finish your answer, sir, in full." The officer then continued, "The confidential informant in this case personally knew Armando Alcantar, [and] relayed that name to myself and the... undercover officer...."
When the case was submitted to the jury, the jurors initially deadlocked in their deliberations. After the jurors were instructed to continue deliberating, however, they did so and ultimately returned a verdict of guilty to trafficking in cocaine.
We recognize that a trial court has wide discretion in areas concerning the admissibility of evidence, but this discretion is obviously limited by the rules of evidence. D.M.L. v. State, 976 So.2d 670, 673 (Fla. 2d DCA 2008) (quoting Hinojosa v. State, 857 So.2d 308, 309 (Fla. 2d DCA 2003)). Here, the trial court's decisions to admit into evidence the irrelevant and prejudicial testimony that the second officer knew Mr. Alcantar from his long experience in law enforcement and to admit into evidence the improper hearsay testimony that the confidential informant identified Mr. Alcantar as the person who sold the drugs were in contravention to the rules of evidence and an abuse of discretion.
Because the second officer did not witness the controlled purchase of drugs, his ability to identify Mr. Alcantar in court was of little or no probative value. If the officer had witnessed the purchase, his prior knowledge of that person's identity might have been relevant to explain how he could identify the seller by name. When properly broached, that type of testimony may have relevancy that is not outweighed by the risk of unfair prejudice. See, e.g., Edwards v. State, 583 So.2d 740, 741 (Fla. 1st DCA 1991). Here, however, the second officer had no contact with Mr. Alcantar during the transaction. The emphasis on his many years of law enforcement experience in the Immokalee community, his prior contact with Mr. Alcantar for "years," and his knowledge of Mr. Alcantar's "street name" combined to suggest strongly that Mr. Alcantar's prior contact with the officer was the result of prior criminal activity.[1] The probative value of this testimony was far outweighed by the undue prejudice it was sure to create. See Hardie v. State, 513 So.2d 791 (Fla. 4th DCA 1987); see also Willis v. State, 669 So.2d 1090 (Fla. 3d DCA 1996).
This error was compounded when the same officer was permitted to testify that the confidential informant identified the seller as Mr. Alcantar. That testimony was clearly inadmissible hearsay. See § 90.801(1)(c), Fla. Stat. (2006); D'Agostino v. State, 582 So.2d 153 (Fla. 4th DCA 1991) (holding detective's testimony as to identification of the defendant by witnesses who did not testify was inadmissible hearsay requiring reversal of judgment).
The fact that the officer's testimony in this regard was initially prompted by the defense counsel's inartful question is of no moment where defense counsel immediately interjected and sought to prohibit the inadmissible answer. The concept of "opening the door" has no application here. As an evidentiary principle, that concept allows the admission of otherwise inadmissible testimony to "qualify, explain, or limit" testimony or evidence previously admitted. *826 Ramirez v. State, 739 So.2d 568, 579 (Fla.1999) (quoting Tompkins v. State, 502 So.2d 415, 419 (Fla.1986)). The concept is "based on considerations of fairness and the truth-seeking function of a trial" and applies when certain testimony is presented that "would have been incomplete and misleading" without the fuller explication. Hudson v. State, 33 Fla. L. Weekly S465, ___ So.2d ___, ___, 2008 WL 2612083, at *10 (Fla. July 3, 2008) (quoting Lawrence v. State, 846 So.2d 440, 452 (Fla.2003)). Here, there was no misleading testimony to correct, and the defense attorney's objection to the testimony should have been sustained. The trial court should not have let the officer thereafter "fully answer" the question.
We conclude these errors were not harmless and merit reversal. The identification of Mr. Alcantar as the seller of the drugs was the critical issue at trial. The undercover officer's testimony on identification was called into question by his limited and dated contact with Mr. Alcantar on two occasions, one of which occurred in the evening. The jury struggled with this case, as indicated by its initial deadlock in the matter. Because these evidentiary errors may have affected the verdict, we reverse the judgment and remand for a new trial.
Reversed and remanded.
VILLANTI, J., and DAKAN, STEPHEN L., Associate Senior Judge, Concur.
NOTES
[1] While this testimony would have been improper even if the suggestion of a criminal record had been accurate, the sentencing hearing established that Mr. Alcantar had no prior conviction for any drug offenses. He did have two grand theft convictions, but these were for offenses committed twelve years earlier.