LEWIS, J.
Samuel Dennis Redd, Appellant, seeks review of his judgment and sentence for trafficking in cocaine. At trial, the State elicited double hearsay and relied on it heavily to prove the truth of the matter asserted therein, which was that Appellant was in possession of some of the cocaine at issue. We conclude that this double hearsay was not admissible under any exception to the hearsay rule and, contrary to the State’s arguments, Appellant did not open the door to its admission. Because the error in the admission of this inadmissible evidence cannot be characterized as harmless, we reverse Appellant’s conviction and remand for a new trial. This disposition renders it unnecessary to discuss the remaining issues on appeal.
When the evidence presented in the State’s case-in-chief is viewed in the light most favorable to the State, it showed the following. On January 14, 2008, Appellant and Randall “Burt” Thomas began moving into a home that was owned by a trust for the benefit of Bobbi Morris’ child. Morris *331 was moving in at the same time, and at least one other person, Janay Economou, helped the others move their belongings into the home. Benjamin Ratliff also went to the house on January 14, 2008. Appellant, Thomas, Morris, Economou, and Ratliff all spent the night there.
On January 15, 2008, law enforcement officers arrived at the house to execute an arrest warrant against Ratliff. When they arrived, Economou and Thomas were in one bedroom, Ratliff was in another, and Appellant and Morris were emerging from a third. On the dresser in the room Eco-nomou and Thomas shared, officers discovered, in plain view, what appeared to be marijuana, drug paraphernalia, and small blue baggies containing cocaine residue. As a result of this discovery, they obtained a search warrant.
While officers were on the premises, they discovered $700 in cash lying next to Appellant’s shoes in the bedroom from which he had emerged. The cash was scattered about on the floor in a manner that Sergeant Ryan Bunton testified was consistent with the sale of narcotics. However, there were no drugs found in this room.
Appellant was also associated with another room in the house, which appeared to be an “add-on.” In a dresser in the add-on room, officers found five small blue baggies, two of which contained cocaine residue and one of which contained Appellant’s fingerprint. There is no indication in the record that the baggie with Appellant’s fingerprint was one of the baggies with cocaine residue. However, the dresser contained other items that appeared to belong to Appellant, including his high school diploma and a legal document with Appellant’s name on it. In addition, there were plaques from a fishing tournament, which were consistent with plaques found elsewhere in the house bearing Appellant’s name.
Attached to the add-on room was a laundry room. In the laundry room, officers discovered a bag containing 95.8 grams of a cocaine mixture. The officer who discovered this bag testified that it was sitting in plain view inside an open cabinet. However, he further explained that it was necessary to enter the room and walk in front of the cabinet or near the front to see the cocaine, which appeared to have been “just tossed in there.” A box of trophies and plaques Appellant had won in fishing tournaments was also found in the laundry room. One of the plaques had the names “Ed Griffin and Dennis Redd” on it. Additionally, some of Ratliffs clothing was in the laundry room.
Officers also discovered a bag containing eighty-four grams of a cocaine mixture in the dining room. This bag was hidden in a basket underneath an artificial plant, which was on top of a china cabinet. There was also a smaller baggie containing suspected cocaine in a drawer of the china cabinet.
Outside the home, officers found and searched a Nissan Altima. Inside the Nissan were Appellant’s driver’s license, several small plastic baggies, a larger bag with Appellant’s fingerprint on it, and small handheld digital scales of the type commonly used in the packaging of illegal drugs. The baggies were located in the center console not far from Appellant’s license. Two scales were underneath the baggies, and one scale was in a compartment in the driver’s door.
Part of the defense’s theory was that there was no reason to believe the cocaine found in the house belonged to Appellant as opposed to any of the other occupants of the house. To prove this point, defense counsel cross-examined Sergeant Jason Byrd about why Thomas was not charged *332 with possession of cocaine even though suspected cocaine was found in plain view in his bedroom. In particular, defense counsel asked Sergeant Byrd, “At that point [when Thomas was charged], what did you know about Dennis Redd that you didn’t know about ... Thomas in regard to possession of cocaine?” Sergeant Byrd answered as follows:
Possession of the cannabis on Mr. Thomas was a result. Post-Miranda Officer Shallar spoke with [Thomas] and he was very up front, very adamant that all the marijuana we originally found in the first room, he took ownership of what was his and that’s the reason. Based on his confession, he admitted [that] all the marijuana was his. The cocaine was just a residual amount on the dresser.
Defense counsel then asked, “[W]hat about the cocaine in other parts of the house?” Sergeant Byrd responded as follows:
[A]ll the identifiable material that was found in and around those products of cocaine either linked back to [Appellant], Bobbi Morris or possibly Ben Ratliff. So to charge [Thomas] with something on the other end of the house that I had no evidence of — any kind of evidence, a name, a document, a fishing award, I think would have been a push to charge him with it in my opinion.
On re-direct, in response to this line of questioning, the prosecutor had Sergeant Byrd testify regarding the nature of Thomas’ cooperation. Over defense counsel’s hearsay objection, Sergeant Byrd testified that he had learned from Officer Larry Shallar that Thomas reported the location of the cocaine in the artificial plant. Also over defense counsel’s hearsay objection, Sergeant Byrd testified that Thomas told Shallar that the cocaine belonged to Appellant and Ratliff. The trial court allowed the testimony based on the State’s argument that defense counsel had “opened the door” to it. Sergeant Byrd explained that officers would not have known about this cocaine without Thomas’ cooperation and that the information provided by Officer Shallar had affected the charging decision.
At the end of the State’s case-in-chief, defense counsel moved for a judgment of acquittal or, in the alternative, reduction of the charge from trafficking in cocaine to simple possession. Both motions were denied.
In closing arguments, the prosecutor relied heavily on the testimony that Thomas had reported Appellant and Ratliff as the owners of the cocaine, and defense counsel’s objections to such reliance were overruled. Ultimately, the jury found Appellant guilty of trafficking in cocaine,[1] and judgment and sentence were entered accordingly.
On appeal, Appellant argues that the trial court erred in denying his hearsay objections. The State does not dispute that the challenged testimony constituted double hearsay, which would ordinarily be inadmissible. The State maintains, however, that the testimony became admissible based on the questions defense counsel posed during the cross-examination of Sergeant Byrd. Although a trial court has wide discretion over the admissibility of evidence, this discretion is “obviously limited by the rales of evidence.” Alcantar v. State, 987 So.2d 822, 825 (Fla. 2d DCA 2008). Our inquiry is whether, under the circumstances of this case, there was any basis for allowing the State to elicit evidence that is generally precluded under the rules of evidence.
*333 The concept of “opening the door” allows for the admission of otherwise inadmissible evidence when it is necessary to qualify, explain, or limit evidence previously admitted. Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000). This evidentiary principle is “based on considerations of fairness and the truth-seeking function of a trial.” Id. (citation omitted). It applies “when one party’s evidence presents an ‘incomplete picture’ and fairness demands the opposing party be allowed to ‘follow up in order to clarify ... and make it complete.’” Brunson v. State, 31 So.3d 926, 928 (Fla. 1st DCA 2010) (citations omitted).
 Because fairness is the key concern of this evidentiary principle, the mere fact that testimony may be characterized as incomplete or misleading does not automatically trigger the admission of otherwise inadmissible evidence under the “opening the door” rule. See Hill v. State, 933 So.2d 667, 670 (Fla. 1st DCA 2006) (noting that “the state is not entitled to present evidence that a defendant has committed an unrelated crime merely because the defendant’s testimony can be characterized as false or misleading”). Rather, the State must demonstrate a legitimate need to resort to such evidence to correct a false impression. See id.; Alcantar, 987 So.2d at 826 (holding that inadmissible evidence should not have been allowed where “there was no misleading testimony to correct”) (emphasis added). Otherwise, the “opening the door” rule threatens to become a pretext for the illegitimate use of inadmissible evidence, and the fairness-promoting purpose of the rule is lost. See Hill, 933 So.2d at 670 (“A suggestion or insinuation made in the defense case cannot be used as a pretext to inform the jury that he has been convicted of a crime before.”).
In deciding whether fairness requires the admission of evidence under the “opening the door” principle, a court should consider the “general unreliability of inadmissible evidence.” Ramirez v. State, 739 So.2d 568, 580 (Fla.1999). The more unreliable the evidence is, the less likely it is that fairness requires its admission. See id. Hearsay is sometimes admissible under the “opening the door” principle. See Adamson v. State, 569 So.2d 495, 495 (Fla. 3d DCA 1990); see also, e.g., Dennis v. State, 817 So.2d 741, 752-53 (Fla.2002) (agreeing with the State that the door was opened to a line of questioning that included implied hearsay and to which a hearsay objection had been lodged). Nevertheless, the inherent unreliability of hearsay is a factor to be considered when it is sought to be admitted under this principle. See Ramirez, 739 So.2d at 580. In such a situation, “the appropriate inquiry ... is whether based on considerations of fairness, the door was opened wide enough by defense counsel’s questions to permit otherwise inadmissible and unreliable statements to be admitted into evidence.” Id. This inquiry should include consideration of the fact that hearsay from a codefendant (or, as in this case, a potential codefendant) is “especially suspect” because a codefendant “has a strong motivation to implicate another.” Id. For this reason, an out-of-court statement made by a codefendant is “even less credible than ordinary hearsay.” Id.
Here, the State argued that the double hearsay elicited from Sergeant Byrd on re-direct was proper because his answer to the question concerning why Thomas was not charged was incomplete. While it may be true that there were additional reasons that Thomas was- not charged and that Sergeant Byrd did not reveal the full extent of Thomas’ cooperation on cross-examination, his answer was *334 not misleading or so incomplete as to be unfair. Therefore, the door was not opened to the admission of hearsay to explain, qualify, or limit his answers.
In fact, on his own, Sergeant Byrd commendably limited his answers to stay within appropriate bounds. The additional information that Thomas pointed the finger at Appellant as the owner of the cocaine did not serve any proper purpose. Rather than leveling the playing field of any unfairness created by the defense’s cross-examination of Sergeant Byrd, this testimony shifted the scales unfairly in the State’s favor by encouraging the jury to rely on inadmissible evidence that the judicial system has deemed inherently unreliable. Because defense counsel did not open the door to this testimony, the trial court should have sustained his hearsay objections.
The State does not contend that the erroneous admission of double hearsay was harmless error in this case. The failure to do so was proper, as we cannot conclude beyond a reasonable doubt that the erroneous admission of Thomas’ statements did not contribute to the verdict. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Thomas’ double hearsay statement that Appellant owned the cocaine was the main evidence that connected Appellant to the cocaine in the dining room. Other than the uncorroborated hearsay from Thomas, the State’s case was entirely circumstantial. Thus, without Thomas’ erroneously admitted statements, Appellant’s motion for judgment of acquittal would have been subject to the “special standard of review” governing circumstantial cases. See State v. Law, 559 So.2d 187, 188 (Fla.1989). That is, the State would have been required to produce some evidence inconsistent with the defendant’s reasonable hypothesis of innocence. See id.
Because the State’s theory was constructive possession of contraband, it needed to show that Appellant had dominion and control over the contraband, knew of its presence, and knew of its illicit nature. Brown v. State, 428 So.2d 250, 252 (Fla.1983). Because Appellant did not have exclusive control over the premises where the contraband was found, the mere presence of the cocaine on the premises was insufficient to establish Appellant’s knowledge of and ability to control it. Id. Rather, the State needed to provide independent proof of these elements. Id. Without Thomas’ statements, there was no evidence that Appellant knew of the presence of the cocaine in either the laundry room or the dining room. Appellant’s knowledge of the presence of these substances and his dominion and control over them could not be inferred from the evidence presented, as the evidence was not inconsistent with Appellant’s hypotheses that he had not been in the laundry room and that he had no reason to know about the cocaine hidden in the artificial plant in the dining room. Thus, without Thomas’ statements, the State would not have been able to prove its case for trafficking.[2] See § 893.135(l)(b), Fla. Stat. (2007) (defining the crime of “trafficking in cocaine” according to the amount possessed, which *335 must be at least twenty-eight grams but less than 150 kilograms).
Despite our conclusion that the evidence was legally insufficient to support a conviction for trafficking without the erroneously admitted evidence,[3] we must conclude that Appellant may be retried for this offense. See Pacheco v. State, 698 So.2d 593, 596 (Fla. 2d DCA 1997) (citing Lockhart v. Nelson, 488 U.S. 33, 40, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (holding that retrial is permitted when “a reviewing court determines that a defendant’s conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction”)). Accordingly, we reverse and remand for a new trial.
REVERSED and REMANDED.
KAHN and CLARK, JJ., concur.

. Although there were two different large quantities of cocaine found in the house and alleged to belong to Appellant, the State charged only one count of trafficking.

. In contrast, the circumstantial evidence was sufficient to show the lesser-included offense of simple possession based on the baggies with residue found in a dresser that the jury could infer belonged to Appellant, to the exclusion of any reasonable hypothesis of innocence. Cf. Robinson v. State, 936 So.2d 1164 (Fla. 1st DCA 2006) (finding sufficient evidence of possession of drugs and paraphernalia where those items were found in a bedroom containing the defendant’s belongings; the evidence suggested only one person occupied the room; and the defendant's fingerprints were found on baggies that did not contain contraband).

. Although Appellant argued that his motion for judgment of acquittal should have been granted, he did not argue that Thomas’ statements, once admitted, could not be considered competent, substantial evidence. We are required to consider even erroneously admitted evidence when reviewing the denial of a motion for judgment of acquittal. Lewis v. State, 754 So.2d 897, 902 (Fla. 1st DCA 2000).