GRIFFIN, J.
Appellant, Hector Melendez [“Melendez”], appeals his conviction and sentence for burglary of a dwelling in violation of section 810.02(3)(b), Florida Statutes (2012); dealing in stolen property in violation of section 812.019(1); and grand theft in violation of section 812.014(2)(c)S. On appeal, Melendez contends that the trial court erred by admitting hearsay evidence consisting of statements made by Melendez’s codefendants. Melendez further contends that the trial court erred by convicting him on both the dealing in stolen property charge and the grand theft charge.
In June of 2012, Tami Anson [“Anson”] and her family rented a house in Osceola County [the “rental house”] for their Disney vacation. On June 8, 2012, while Anson and her family were visiting Downtown Disney, the rental house was burglarized, and an iPad, Nikon camera, laptop, video camera, and two iPods were stolen. A remote locator device on An-son’s iPad directed law enforcement officers to the residence of Richard and Jacqueline Pellegrino, located on Flamingo Lakes Drive [the “Flamingo Lakes residence”]. Both the iPad and the Nikon camera were found at the Flamingo Lakes residence, and Richard Pellegrino [“Richard”] was arrested. Richard originally told Deputy Andrew Stokes [“Deputy Stokes”] that he had purchased the stolen items at a bar, but after he was placed under arrest, Richard explained that he had received the items from Jorge Velez [“Jorge”] in exchange for a loan to Jorge’s daughter, Kimberly Velez [“Kimberly”]. Jorge and his girlfriend, Yadiria Medina-Rivera [‘Yadi”], had recently moved into the Flamingo Lakes residence with Richard and Jacqueline.
Both Jorge and Yadi, who were also present at the Flamingo Lakes residence *458 when law enforcement officers arrived, were then placed under arrest. Detective James Forgey [“Detective Forgey”] spoke with Jorge and Yadi, who confessed to their part in the burglary, grand theft, and dealing in stolen property, and implicated Melendez as a suspect. Detective Forgey then gave this information to Detective Nicholas Bardis [“Detective Bardis”], who used it to prepare the search warrant for Melendez’s residence. Upon entering Melendez’s residence, Detective Forgey and other law enforcement officers found Melendez and Kimberly in bed. When Melendez rose from the bed, an iPod (which was later identified as one of the items stolen from the rental house but which, for some reason, was not one of the items Melendez was charged with stealing and was not listed in the State’s trial exhibit as one of the stolen items), fell out of Melendez’s possession. Detective Forgey testified that Melendez, realizing that the law enforcement officers knew that the iPod was stolen, stated, “Big Deal. You’ve got me on this one.” Detective Forgey further testified that Melendez told him “I’ll be back out — I’ll be back out doing licks because probation’s a fucking joke.”[1]
Ultimately, Melendez, Richard, Jorge, Yadi, and Kimberly were charged with burglarizing the rental house, dealing in stolen property — the iPad and Nikon camera — and grand theft of the iPad, Nikon camera, and “other personal property.” The charges against Richard were subsequently dropped.
At Melendez’s trial, the State sought to prove that Melendez took part in the burglary of the rental house and the theft and trafficking of the iPad and Nikon camera.[2] The State elicited from Detective Forgey the information given to him by Jorge, Yadi, and Kimberly regarding the events of June 8, 2012. Over Melendez’s hearsay objection, Detective Forgey testified that, according to the codefendants’ statements, the following events occurred on June 8, 2012: Melendez and Kimberly arrived at the Flamingo Lakes residence in the early afternoon of June 8, 2012, picked up Jorge and Yadi, and drove to a neighborhood off of Poinciana Boulevard. Once there, Jorge and Yadi remained in the vehicle and Kimberly and Melendez were let out on foot just outside the neighborhood’s wall. Melendez instructed Jorge to drive the vehicle out of the area and to wait for Melendez’s phone call. Then, Melendez and Kimberly walked into the neighborhood and split up. Kimberly acted as a lookout while Melendez committed the burglary. Melendez called Jorge, who drove back to the neighborhood to pick up Melendez and Kimberly.
Melendez took the stand to testify in his defense. His defense was short and simple: he did not burglarize the rental house, he did not have an iPod with him when he was arrested, he does not know and has never met Richard and Jacqueline Pelle-grino, he did not sell Richard a laptop, Kimberly had his cell phone on the day of the burglary, and, during the burglary, he was at Walmart. Melendez was convicted on all three counts and was sentenced to sixty months for each offense to be served concurrently.
On appeal, Melendez contends that the contents of the codefendants’ statements about their — and Melendez’s — role in the burglary, theft and dealing in stolen prop *459 erty constituted out-of-court statements, introduced to prove the truth of the matter asserted, which were not admissible under either the rules of evidence or case law. In response, the State contends that the statements were properly admitted because they “completed the incorrect impression left by [Melendez’s] cross-examination.”
“[U]nder most circumstances, it is error to admit the details of a non-testifying codefendant’s confession into evidence against the defendant.” Ramirez v. State, 739 So.2d 568, 579 (Fla.1999). “This is because admission of a codefendant’s statements is inadmissible hearsay and violates the Confrontation Clause of the Sixth Amendment to the United States Constitution.” Id. “A codefendant’s statements are especially suspect because he has a strong motivation to implicate another, rendering these statements even less credible than ordinary hearsay.” Id. (emphasis added). However, the concept of “opening the door” allows the admission of otherwise inadmissible testimony to qualify, explain, or limit testimony or evidence previously admitted. Lawrence v. State, 846 So.2d 440, 452 (Fla.2003) (citing Rodriguez v. State, 753 So.2d 29 (Fla.2000)). The concept of “opening the door” is based on considerations of fairness and the truth-seeking function of a trial. Id. But “[because fairness is the key concern of this evidentiary principle, the mere fact that testimony may be characterized as incomplete or misleading does not automatically trigger the admission of otherwise inadmissible evidence .... ” Redd v. State, 49 So.3d 329, 333 (Fla. 1st DCA 2010). “Rather, the State must demonstrate a legitimate need to resort to such evidence to correct a false impression. Otherwise, the ‘opening the door’ rule threatens to become a pretext for the illegitimate use of inadmissible evidence, and the fairness-promoting purpose of the rule is lost.” Siegel v. State, 68 So.3d 281, 288 (Fla. 4th DCA 2011) (quoting Redd, 49 So.3d at 333). Thus, “the appropriate inquiry here is whether based on considerations of fairness, the door was opened wide enough by defense counsel’s questions to permit otherwise inadmissible and unreliable statements to be admitted into evidence.” Ramirez, 739 So.2d at 580 (emphasis added). “The issue is not always whether the door has been opened, but rather how wide it has been opened.” Rodriguez, 753 So.2d at 42.
In Ramirez, the Florida Supreme Court agreed that “the limited questions by the defense counsel on cross-examination of the officer that needed to be clarified or explained on redirect were whether there was any other ‘evidence’ that pointed to [the defendant] as the individual who raped the victim or contradicted [the defendant’s] assertion that he acted at [the codefendant’s] direction. This inquiry opened the door only to allow the State to explain that [the codefendant’s] confession contradicted these assertions.” Id. at 581. The court held that the inquiry “did not open the door to the questions on redirect regarding the details of what [the codefen-dant] stated when [the codefendant] was unavailable for cross-examination.” Id.
In support for this ruling, the Ramirez court cited with approval the Second District’s decision in Pacheco v. State, 698 So.2d 593 (Fla. 2d DCA 1997). In Pacheco, the court found that the State was properly allowed to ask whether the code-fendant had implicated the defendant because defense counsel’s questions implied that only one other person incriminated the defendant. Id. at 595. However, the court held that the State went too far when it elicited details of the confession:
The detective’s testimony and the taped statement, however, went well beyond *460 the fact that Neilson accused Pacheco of participating in the crime. This evidence provided specific details about the commission of the offense, and it portrayed Pacheco as the instigator of the crime. Pacheco’s limited questions about Ms. Humphrey’s role in his capture did not throw the door open wide enough to admit the entire confession of a codefendant who refused to testify. This evidence was inadmissible; it violated both the hearsay rule and the Confrontation Clause.

Id.

Similarly here, the State went too far when it elicited the details of the code-fendants’ confessions because such details were not legitimately necessary to qualify or explain any misleading or incomplete impression created by Melendez’s defense counsel. At trial, the State argued that it should be allowed to introduce evidence of the codefendants’ statements — which were the basis of the search warrant of Melendez’s home — because, when Melendez’s defense counsel asked Detective Bardis about the basis of his search warrant, he said:
Q: When you said you developed information that gave you this other apartment’s address, that information came from whom?
A: From the codefendants at the Flamingo Lakes address....
Q: —and, basically, they say: we didn’t take it, somebody else did and you go some place else? ...
A: Exactly, all the information was given to me for the search warrant by another detective.
On appeal, the State contends that Melendez’s defense counsel opened the door to allowing the codefendants’ statements into evidence because Melendez’s defense counsel’s question gave the impression that the codefendants said, “We did not take the items, someone else did.” While it may be that Melendez’s defense counsel’s questions opened the door to allow the State to clarify that the codefendants had implicated themselves in the crimes, as well as implicating Melendez, the door was not opened so wide as to admit the details of the confessions into evidence. It was error to allow Detective Forgey to testify to the details of the codefendants’ confessions.[3]
The next question is whether this error was harmless. See LaMarr v. Lang, 796 So.2d 1208, 1209 (Fla. 5th DCA 2001). There was other admissible evidence against Melendez that was introduced at trial, including Jacqueline’s testimony that Melendez and Kimberly picked up Jorge and Yadi from the Flamingo Lakes residence and returned later that night with two iPads; Jacqueline’s testimony that she heard Melendez tell Kimberly that they had to split the proceeds from the iPads with Jorge; Richard’s testimony that Melendez was with Jorge when Jorge brought the iPads to Richard’s home; Agent Molina’s testimony that Melendez’s cell phone was in use in the general location of the rental residence during the time of the burglary; Melendez’s incriminating statements; and the stolen iPod found in Melendez’s possession. We find that the error was harmless with respect to the convictions for grand theft and dealing with stolen property. It cannot be said, however, that the hearsay statements did not contribute to Melendez’s conviction for burglary. The evidence that Melendez participated in the burglary is circumstan *461 tial and not compelling without the code-fendants’ statements.
Melendez also argues on appeal that his conviction and sentence for both grand theft and dealing in stolen property violates double jeopardy.
Section 812.025, Florida Statutes (2012), provides as follows:
Notwithstanding any other provision of law, a single indictment or information may, under proper circumstances, charge theft and dealing in stolen property in connection with one scheme or course of conduct in separate counts that may be consolidated for trial, but the trier of fact may return a guilty verdict on one or the other, but not both, of the counts.
As the Florida Supreme Court explained in Hall v. State, 826 So.2d 268, 271 (Fla. 2002), section 812.025 allows the State to charge theft and dealing in stolen property in connection with one scheme or course of conduct in separate counts, “but the trier of fact must then determine whether the defendant is a common thief who steals property with the intent to appropriate said property to his own use ... or whether the defendant traffics or endeavors to traffic in the stolen property.” In other words, “a defendant may be charged with both theft and dealing in stolen property, but cannot be found guilty of both crimes.” Blackmon v. State, 121 So.3d 535, 541 (Fla.2013) (quoting Goddard v. State, 458 So.2d 230, 233 (Fla.1984)).
The State contends that Melendez’s dual conviction for grand theft and dealing in stolen property is not prohibited by section 812.025 because Melendez could have been convicted of grand theft with respect to the stolen items that were never recovered (and thus not a basis for the charge of dealing in stolen property). The State points out that the information charged him with grand theft of the iPad, Nikon camera, “or other personal property.” However, a similar argument was rejected by the Third District in Jones v. State, 453 So.2d 1192, 1194 (Fla. 3d DCA 1984). In Jones, the court agreed with the defendant that section 812.025 precluded his dual conviction for grand theft and dealing in stolen property, “notwithstanding the state’s attempt to circumvent the statute’s prohibition by limiting the grand theft count to the stolen car and limiting the dealing in stolen property to the stereo component system.” Id. “Since the theft of the car and the stereo and the sale of the stereo two days later were all a portion of the same scheme or course of conduct ... the convictions and sentences for both ... cannot stand.” Id.
Recently, the Florida Supreme Court held that the proper remedy on appeal for dual convictions rendered contrary to section 812.025, but where the defendant had failed to raise section 812.025 at trial, is to vacate the conviction and sentence of the lesser offense. Blackmon, 121 So.3d at 538.
Accordingly, we affirm the conviction for dealing in stolen property and vacate the conviction for grand theft. We reverse the conviction for burglary and remand for new trial.
AFFIRMED in part; REVERSED in part; grand theft conviction VACATED.
EVANDER and BERGER, JJ., concur.

. Detective Forgey testified that "licks” is a street term for burglaries or robberies.

. Although the information charged Melendez with grand theft of the iPad, Nikon camera, "and other property,” the jury instructions limited the grand theft charge to the iPad and Nikon camera.

. Additionally, any misleading and incomplete impression that may have emanated from defense counsel’s question was properly corrected through previous testimony of Detective Bardis and Detective Forgey.