# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**JOHN EDWARD BROWN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-3031

[April 15, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 16-14806 CF10A.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant John E. Brown appeals his conviction for second-degree murder with a firearm. Appellant raises several issues on appeal, but we write only to address his argument that the trial court erred in allowing a witness's hearsay testimony describing the shooter, where the witness did not testify at trial. On this issue, we reverse and remand for a new trial.

## Background

At trial, several witnesses testified that they heard gun shots on the day of the murder. The police were summoned. The officers discovered the victim's body in an alley, but they could not immediately determine who had shot him. The officers canvassed the neighborhood and took statements from various witnesses who claimed to have seen either Appellant shoot the victim or Appellant running from the alley immediately after the gunshots.

One of these witnesses ("Witness X") claimed to have witnessed the shooting from her home, which parallels the alley where the shooting

occurred. When questioned by the police, Witness X described the shooter as an approximately 5'8" black male with short, cropped hair, facial hair and a stocky build. She also stated that the shooter was wearing a black, sleeveless shirt and lighter long shorts. This physical description of the shooter's build and clothing matched Appellant's build, height, and clothing on the day of the shooting.

The officers then showed Witness X video surveillance from inside of a food mart located next to the alley and asked her to pick out the shooter. The video contained footage of Appellant and two other potential suspects who had been inside the food mart earlier that day. Based on the footage, Witness X pointed to Jeffrey Ridgeway as the man she was "98 percent sure" was the shooter. However, despite this identification of Ridgeway as the shooter, the police focused their investigation on Appellant because of statements from other purported witnesses (including Ridgeway) and because Witness X's earlier physical description of the shooter and his clothing matched Appellant, rather than Ridgeway.

At trial, the primary issue was the identity of the shooter – whether it was Appellant, Ridgeway, or some other person. The defense's theory was that Appellant had gone into the alley to smoke marijuana before getting a haircut, but that he had not shot the victim. The defense used its cross-examination of Ridgeway to advance this theory, asking his location when the shots were fired and whether he was aware that "one or two" witnesses had identified him as being involved in the shooting. Ridgeway denied hearing those allegations and denied having any involvement in the shooting.

While Witness X did not testify at trial, the detective to whom she had spoken after the shooting testified, relaying Witness X's description of the shooter and his clothing. When asked about Witness X's identification and physical description of the shooter, the following exchange took place, over the defense's hearsay objections:

> Q: Now, you went as far as to show [Witness X] the videotape from the interior of the Hollywood mart, correct?
>
> A: That's correct.
>
> Q: She picked out who was the person that she told you she was 98% certain was the shooter?
>
> A: Jeffrey Ridgeway.

2

. . .

Q: So, as you speak with [Witness X]. Now, when you speak (sic) to her, did she also give you a verbal physical description prior to seeing video?

A: Correct.

Q: What was that verbal physical description of the person she saw shooting?

Defense Counsel: Objection, Judge, hearsay.

Prosecutor: It is of the defendant.

The Court: Overruled.

Q: Could you answer?

A: A black male, approximately 5'8", wearing a black sleeveless shirt, a lighter long shorts, short cropped hair, facial hair with stocky build.

Defense counsel objected to this line of questioning based on hearsay ("He is taking what is tantamount to hearsay of another witness bringing in saying what it is that she said the person looked like."). However, the court overruled the objection and the State continued:

Q: Did the physical description that [Witness X] provided you of the shooter, did it match Jeffrey Ridgeway?

A: No.

. . .

Q: Did the physical description match that of Jeffrey Ridgeway or the defendant in this case?

A: The defendant.

The detective explained that based on Witness X's identification of Ridgeway in the video as the same man she had seen during the shooting, Ridgeway had initially been a suspect. However, in light of Witness X's physical description of the shooter and other witness statements that gave

3

similar identifications of the shooter, the police eliminated Ridgeway as a suspect. The detective further explained that the physical descriptions of the person running from the alley, coupled with video surveillance showing Ridgeway and the victim walking together just before the shooting but separating and going in opposite directions, were inconsistent with Ridgeway as the possible shooter.

Appellant was convicted of second-degree murder with a firearm and sentenced to life in prison. This appeal followed and raises several issues, including the admission of Witness X's statements to the police over the defense's hearsay objections.

## Analysis

A trial court's rulings on evidentiary matters are within its sound discretion and are reviewed for abuse of discretion. *Ramirez v. State*, 810 So. 2d 836, 853 n.51 (Fla. 2001). "Discretion is abused only where no reasonable person would view the matter as the trial court did." *Id.* However, the question of whether evidence falls within the statutory definition of hearsay is a question of law, subject to de novo review. *K.V. v. State*, 832 So. 2d 264, 265–66 (Fla. 4th DCA 2002).

Section 90.801(1)(c), Florida Statutes (2018), defines hearsay as a statement, other than one made by the declarant while testifying at trial, offered into evidence to prove the truth of the matter asserted. Otherwise stated, a statement is hearsay if it is made out-of-court and offered to prove the truth of its contents. It is well-established that, except as provided by statute, hearsay evidence is generally inadmissible. § 90.802, Fla. Stat. (2018). Inadmissible hearsay that bolsters and supports the testimony of another witness allows the State to present multiple witnesses "for the price of one." *Keen v. State*, 775 So. 2d 263, 276 (Fla. 2000).

Here, the detective's testimony reciting Witness X's physical description of the person whom she saw running from the alley and whom she believed to be the shooter was hearsay. The statements describing the shooter were made by someone other than the detective and were introduced to prove the truth of their contents – that the shooter was an approximately 5'8" black male with short, cropped hair, facial hair, and a stocky build, who was wearing a black sleeveless shirt and lighter long shorts – a description that matched Appellant's appearance on the day of the shooting. Admission of Witness X's statement bolstered the statements made by testifying witnesses (each of whose credibility was questioned) with respect to their description of the shooter. "Where the implication from in-court testimony is that a non-testifying witness has made an out-of-court

4

statement offered to prove the defendant's guilt, the testimony is not admissible." *Schaffer v. State,* 769 So. 2d 496, 498 (Fla. 4th DCA 2000).

When the trial court has improperly admitted inadmissible evidence, an appellate court will nonetheless uphold the erroneous evidentiary ruling when the error is harmless. *Cooper v. State*, 43 So. 3d 42, 43 (Fla. 2010). In criminal cases, "[t]he harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986).

Here, Witness X's physical description of the alleged shooter went straight to the primary disputed issue in this case — the identity of the shooter. Her description of the man running from the alley matched Appellant's physical characteristics and clothing on the day of the incident, which tends to negate the defense's theory that Ridgeway or some other person was involved in or present during the shooting, rather than Appellant. Because a reasonable possibility exists that the introduction of Witness X's description of the shooter affected the verdict, we cannot conclude the error was harmless. *See Lewis v. State*, 80 So. 3d 442, 444 (Fla. 4th DCA 2012) (finding no harmless error in a case that "rested on witness credibility").

The State argues in its answer brief that the admission of Witness X's physical description of the shooter through the detective's testimony was proper because the defense "opened the door" and invited the error. "[T]he concept of 'opening the door' allows the admission of otherwise inadmissible testimony to 'qualify, explain, or limit' testimony or evidence previously admitted." *Rodriguez v. State,* 753 So. 2d 29, 42 (Fla. 2000) (citations omitted). The concept is "based on considerations of fairness and the truth-seeking function of a trial," and applies when one party presents evidence that portrays an incomplete picture so that fairness demands the opposing party be given an opportunity to clarify and complete the picture. *Redd v. State*, 49 So. 3d 329, 333 (Fla. 1st DCA 2010).

As detailed above, during the defense's cross-examination of Jeffrey Ridgeway, the defense briefly asked whether he was aware that somebody had identified him as running from the alley at the time of the shooting. Ridgeway responded that he had not heard those allegations, and the defense did not continue this line of questioning.

The mere fact that testimony may be characterized as incomplete or misleading does not *automatically* trigger the admission of otherwise inadmissible evidence under the opening the door principle. *Id.* Rather, the State must show a legitimate need to correct a false impression before resorting to inadmissible evidence, otherwise the principle becomes a mere pretext for the illegitimate use of inadmissible evidence. *See id.*; *Menendez v. State*, 135 So. 3d 456, 460 (Fla. 5th DCA 2014) (evidence must be "legitimately necessary to qualify or explain any misleading or incomplete impression created . . . ."). Here, defense counsel's brief exchange with Ridgeway did not open the door wide enough for the State to introduce Witness X's hearsay statements describing the shooter. *See, e.g., Pacheco v. State*, 698 So. 2d 593, 595 (Fla. 2d DCA 1997) (holding that the State was properly allowed to ask whether the co-defendant had implicated the defendant, but defense "did not throw the door open wide enough to admit" the substance of co-defendant's hearsay statement to detective).

## Conclusion

As set forth above, we reject the State's argument that the defense "opened the door" to the admission of otherwise inadmissible hearsay testimony. Moreover, because the evidence of identity was central to the State's case and to Appellant's defense, we cannot conclude beyond a reasonable doubt that the error in admitting Witness X's description of the shooter did not contribute to Appellant's conviction. As such, we reverse and remand for a new trial.

*Reversed and remanded for new trial.*

WARNER, J., and WALSH, LISA S., Associate Judge, concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***