814 So.2d 483 (2002)
STATE of Florida, Appellant/Cross-Appellee,
v.
Ray Lynn RUSSELL, Appellee/Cross-Appellant.
No. 5D01-938.
District Court of Appeal of Florida, Fifth District.
April 5, 2002.
*485 Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellant/Cross-Appellee.
James B. Gibson, Public Defender and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellee/Cross-Appellant.
SHARP, W., J.
The state appeals from the trial court's order which granted Russell's motion to suppress "evidence of the statements" (presumably both his former stepdaughter's recollection of the interview between them and the tape recording of their conversation) he made to his former stepdaughter, V.H., when she came to visit him in prison on April 5, 2000. The defense cross-appeals the trial court's order which refused to suppress statements Russell made to police at the prison on April 28, 2000, after being confronted with the tape recording and after having been given Miranda warnings.[1] We reverse the first ruling which precludes admission of the taped conversation and testimony concerning it. Because the basis of the cross-appeal is that the second confession was the "fruit of the poisonous tree," pursuant to Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), we do not reach that issue and affirm the second ruling.
The findings of the trial court are supported by substantial and competent evidence and we accept them as controlling in this case. In 1981 and 1982, Russell was married to V.H.'s mother and he apparently engaged in sexual activity with V.H, when she was seven or eight years old. A file with V.H.'s statements concerning sexual battery on her perpetrated by Russell existed in 1984, but the state attorney's office filed a "no information" in the case. In 2000, after V.H. was an adult, she asked that her case be reinvestigated and prosecuted.
The police were unable or unwilling to reactivate the case without additional evidence against Russell. They suggested that she visit Russell in prison where he was serving a habitual offender sentence of twenty years for burglary and grand theft, in order to get him to admit he committed the sexual offenses. She was to wear a listening device, which would permit the police to overhear the conversation with Russell and to record it.
On April 4, 2000, V.H. visited with Russell in the visitor's reception area of the prison. She was wearing a listening device. She had not seen him for twenty *486 years. She told him that her visit was prompted by her therapy to recover from the sexual abuse she had experienced at his hands when she was a child. She needed him to acknowledge the things he had done to her and to say he was sorry. She wanted to repair their relationship. He made incriminating statements.
She became emotionally upset and the police monitoring the conversation called her out of the reception area. She was told to get Russell to admit specific dates and times. On her return, she pressed him to confirm her memories. He admitted he had performed sexual acts on her, but not that he had penetrated her, and he said it had not occurred often.
Russell then said that when he first heard she was coming to visit him he thought it was a "set-up." He also acknowledged that if their conversation was being recorded he had said enough to merit prosecution. But he said he would not lie and he would not fight the prosecution. V.H. did not tell Russell their conversation was being recorded but she also did not tell him it was not or that she would keep the conversation confidential. Thereafter, on April 28, 2000, police read Russell his Miranda rights, played the taped conversation of his statements to V.H., and Russell made additional incriminating statements to them at that time.
The trial court suppressed the evidence concerning the conversation between Russell and V.H., because Russell was "entitled to an attorney" at the time of the interview and because the tape recording was an unreasonable interception of a private communication in violation of article I, section 12 of the Florida Constitution. Our review of the application of law to this ruling is de novo.[2] We disagree with the trial court's application of law in this case and further, with appellee's additional arguments on appeal that Russell's fifth and sixth amendment rights, and his due process rights were violated.
We find no possibility that Russell's sixth amendment right to counsel was violated. The purpose of the sixth amendment right to counsel is to protect an accused at critical confrontations with the government, after the adversarial positions of the defendant and the government have "solidified" with regard to a specific crime. McNeil v. Wisconsin, 501 U.S. 171, 177-78, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). It arises only after initiation of adversarial judicial proceedings and is offense specific. Maine v. Moulton, 474 U.S. 159, 179-180, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); Gore v. State, 599 So.2d 978 (Fla.1992). In this case, no arrest on the sexual battery charges had been made and no information had been filed with regard to those charges. In fact, it appears the government had given up on prosecuting the case until V.H. urged them to reopen her case. Being held and formally charged with one crime does not bar questioning about other uncharged crimes. McNeil; Illinois v. Perkins, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990); Jones v. State, 756 So.2d 243 (Fla. 5th DCA 2000).
Nor do we find a basis to conclude that Russell's fifth amendment right to counsel was violated here. In Edwards v. Arizona, 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court ruled that once a suspect invokes his or her fifth amendment right not to speak to the police without assistance of counsel, police may not continue with interrogation. Here, no Miranda *487 rights were read to Russell. He did not halt the conversation or insist on communicating about the sexual abuse claims only with the assistance of counsel. See Gore.
Russell's primary argument in this context appears to be that he was entitled to be read his Miranda rights by the police or by V.H., since she was acting as a police agent. However, Miranda warnings are not required unless a suspect is in custody and facing interrogation by the police. McNeil; Perkins. It is insufficient that a suspect is already in prison being held on other charges, to establish custodial interrogation in a different case. In such cases, the suspect's freedom must be more limited than per normal prison routine. See Garcia v. Singletary, 13 F.3d 1487 (11th Cir.1994). Here, Russell was simply talking with V.H. in the visiting reception area and could have refused to speak with her or terminated the conversation and left.
Further, in most cases, conversations between suspects and undercover agents do not implicate the concerns which produced Miranda. See Odom v. State, 403 So.2d 936 (Fla.1981), distinguished on other grounds, Holland v. State, 773 So.2d 1065 (Fla.2000). Miranda is designed to protect an accused in a police dominated atmosphere and is not implicated when an incarcerated person speaks freely to someone who he believes is a fellow inmate. Perkins. In sum, Miranda forbids coercion not mere "strategic deception."
Russell argues that more than strategic deception was involved in this case and that his due process rights were violated by V.H.'s deceptive tactics, inspired by the police, which procured his confessions. He relies on Walls v. State, 580 So.2d 131 (Fla.1991) and Voltaire v. State, 697 So.2d 1002 (Fla. 4th DCA 1997) We find both distinguishable. In Voltaire, the defendant/suspect was being held in jail on specific charges. An undercover agent was placed in his cell to get him to discuss the crime related to the same charges. Voltaire had previously refused to talk to the police about the charges. The court said the police had engaged in gross deception to evade Voltaire's fifth amendment rights, which he had previously invoked. No similar circumstances occurred here.
Similarly, Walls is an extreme case, implicating the violation of that defendant's sixth amendment rights. Walls was in prison and facing prosecution on a murder charge. An officer violated his due process rights by posing as his friend, by telling him he could speak in confidence to her, and advising him not to tell his attorney about their conversations. She then turned over her notes and observations to the state to use against him in his defense of incompetency to stand trial in that same murder case. Not only were the police agent's statements false, but she interfered with that defendant's sixth amendment right to counsel.
This case, however, involved no such gross deception. V.H. never told Russell she would not reveal to the police or others the statements or admissions he made to her. Much of what she said to him was true. She was his former stepdaughter and, as a child, she had experienced sexual abuse by him. She was very upset about it, even years later. She never told him she was not "bugged" or wired. And, in fact, Russell considered the possibility that V.H. might be tape recording the conversation, based on his statements to her.
We think this case is closer to the factual situation in Jones v. State, 756 So.2d 243 (Fla. 5th DCA 2000). In that case a suspect's fiancee' made a jail visit to him. She was "wired," although she did not tell him of the wire. She did say she would not lie about the other charges not yet *488 brought against him and encouraged him to tell her the truth about them. This court held that was not a violation of the defendant's fifth amendment due process rights.
We also disagree with the trial judge that there was a violation of Russell's right to privacy concerning the interception of private communications. Odom, relied upon by the trial court, was based on a pre-amended version of article I, section 12 of the Florida Constitution, and it barred only the tape of the conversation, not the witness' statement about it. Had this conversation occurred over the telephone, there would be nothing amiss about it pursuant to section 934.03(2)(c), because it was taped with the consent of one party and for the purpose of gathering evidence about a crime. State v. Sobel, 743 So.2d 38 (Fla. 5th DCA 1999); Barr v. State, 659 So.2d 370 (Fla. 5th DCA 1995); State v. Stout, 693 So.2d 657 (Fla. 4th DCA 1997).
Nor do we think Russell had any reasonable subjective expectation of privacy for his in-prison conversation, or that there is a societal recognition that such an expectation is reasonable in the visitor's reception area of a prison during visitation. See State v. Smith, 641 So.2d 849 (Fla.1994) (persons sitting in the back of a patrol car); Pires v. Wainwright, 419 So.2d 358 (Fla. 1st DCA 1982) (wiretap of conversation between prison in correctional facility and outside callee); Stout (wiretap of conversation between suspect and victim of sexual battery wherein victim called suspect at his home).
REVERSED and REMANDED; Cross-Appeal AFFIRMED.
PETERSON and GRIFFIN, JJ., concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] See Underwood v. State, 801 So.2d 200 (Fla. 4th DCA 2001); Rosenquist v. State, 769 So.2d 1051 (Fla. 2d DCA 2000); Ikner v. State, 756 So.2d 1116 (Fla. 1st DCA 2000).