COX, JACK S., Associate Judge.
 

 Perry Joseph appeals his convictions of second-degree murder and attempted armed robbery and argues that the trial court erred by: (1) denying the motion to suppress Joseph’s statements to the police; (2) failing to conduct an in camera examination of grand jury testimony; (3) denying Joseph’s motions for mistrial; and (4) granting the state’s peremptory challenge of an African-American juror. We affirm.
 

 FACTS
 

 According to the evidence, on August 23, 2003, David Snell was shot in the chest and died. Detectives from the Broward County Sheriffs Office (BSO) questioned Gregory Pierre, who was incarcerated on unrelated charges. Pierre offered information regarding the Snell murder and stated Joseph, the defendant, could corroborate his story. Also incarcerated on unrelated charges, Joseph was transported from the Broward County Jail to the Public Safety Building.
 

 First Interview
 

 At the Public Safety Building, Pierre and Joseph were placed in the same interrogation room and their conversation was recorded. Joseph told Pierre that he was not present during the Snell murder. The detective took Joseph alone to a locked interrogation room and read him his
 
 Miranda
 

 [1]
 

 rights. Joseph denied being present during the Snell murder, but identified someone named Ellis as the culprit. After the interview, Joseph returned to the Bro-ward County Jail.
 

 Second Interview
 

 Detectives from the Fort Lauderdale Police Department later questioned Pierre about a case referred to as the “Chinese homicide,” and Pierre again indicated that Joseph would corroborate his story. Joseph was incarcerated at the North Bro-ward Detention Center, where he spoke to the detectives. Joseph admitted he was a passenger in the car during the “Chinese homicide,” indicated that Pierre was not truthful about the people involved, and identified three people also in the ear. Joseph also admitted that he had not been truthful with the BSO detectives about the Snell murder. Upon learning that Joseph was a witness to the “Chinese homicide,” the detective stopped the interview and directed Joseph to speak with his attorney. The detective asked Joseph if he could inform the BSO of the conversation and if Joseph would speak to the BSO again, and Joseph agreed.
 

 Third Interview
 

 BSO detectives met with Joseph, who was no longer incarcerated, at the BSO headquarters. A BSO detective picked Jo
 
 *310
 
 seph up at his house because Joseph’s license had been suspended. The detectives testified at the suppression hearing that Joseph agreed to talk to the BSO and that Joseph knew that a detective would drive him to the headquarters. However, according to Joseph, a detective called and indicated that he needed to talk to him. While on the phone, the detective arrived at his house and handcuffed Joseph. In any event, Joseph spoke with the detectives in a locked interrogation room, and the interview was recorded. Joseph claims that before the recording began, he asked to speak to his attorney. The detectives allowed Joseph to smoke cigarettes outside. After the interview, a detective drove Joseph home.
 

 On February 11, 2004, Joseph was indicted by grand jury for the first-degree murder and attempted armed robbery of Snell. Joseph filed a motion to suppress his statements made during the three interviews. The trial court denied the motion.
 

 Joseph also filed a motion for in camera review of Pierre’s grand jury testimony. The state informed defense counsel that Pierre did not testify before the grand jury. Based upon this representation, Joseph withdrew the motion. Pierre testified at trial and revealed that he had testified before the grand jury. Joseph objected, asserting a Richardson
 
 [2]
 
 violation, which the trial court denied after a hearing.
 

 The jury convicted Joseph of second-degree murder and attempted armed robbery.
 

 MOTION TO SUPPRESS
 

 Joseph argues that the trial court should have suppressed his statements to the police during the three interviews. He contends that the
 
 Miranda
 
 warning during the first interview was insufficient and that he did not receive
 
 Miranda
 
 warnings during the second and third interviews.
 

 The dictates of
 
 Miranda
 
 apply exclusively to custodial interrogations.
 
 Kessler v. State,
 
 991 So.2d 1015, 1019 (Fla. 4th DCA 2008). Whether a person is in custody is a mixed question of law and fact.
 
 Ramirez v. State,
 
 739 So.2d 568, 574 (Fla.1999). The first step in determining whether a person is in custody depends on the circumstances surrounding the interrogation.
 
 State v. Weiss,
 
 935 So.2d 110, 116 (Fla. 4th DCA 2006) (citing
 
 Connor v. State,
 
 803 So.2d 598, 606 (Fla.2001)). Second, the court must determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave.
 
 Id.
 
 In
 
 Ramirez,
 
 the Florida Supreme Court adopted a four-factor test to determine whether a reasonable person in the suspect’s position would consider himself in custody: “(1) the manner in which police summon the suspect for questioning; (2) the purpose, place, and manner of the interrogation; (3) the extent to which the suspect is confronted with evidence of his or her guilt; (4) whether the suspect is informed that he or she is free to leave the place of questioning.” 739 So.2d at 574 (citing
 
 State v. Countryman,
 
 572 N.W.2d 553, 558 (Iowa 1997)).
 

 The first interview took place while Joseph was incarcerated on unrelated charges; however, his incarceration does not mean he was in custody for
 
 Miranda
 
 purposes.
 
 State v. Russell,
 
 814 So.2d 483, 487 (Fla. 5th DCA 2002) (“It is insufficient that a suspect is already in prison ... on other charges, to establish custodial interrogation in a different case.”). The test is whether the suspect’s freedom is more lim
 
 *311
 
 ited than during normal prison routine.
 
 Id.
 
 During the first interview, Joseph’s freedom was not more limited than during his normal jail routine. At the suppression hearing, the detective testified that Joseph would have been permitted to smoke and that he was able to move around, giving him far more freedom than he would have had in jail. Additionally, Joseph received a
 
 Miranda
 
 warning. Although the
 
 Miranda
 
 warning was not perfectly clear, it was “sufficiently comprehensive and comprehensible when given a commonsense reading.”
 
 Florida v. Powell,
 
 — U.S.-, 130 S.Ct. 1195, 1205, •— L.Ed.2d-(2010).
 

 During the second interview, Joseph was incarcerated when detectives met with him to discuss the “Chinese homicide.” At that time, Joseph was not a suspect in any homicide; he was merely corroborating Pierre’s story. Because Joseph was not confronted with evidence of his involvement in the Snell murder, a reasonable person in his position would not have thought that he was in custody for
 
 Miranda
 
 purposes.
 
 See Duggins v. State,
 
 776 So.2d 946, 947 (Fla. 3d DCA 2000) (concluding that defendant was not in custody during an interrogation because he was not a suspect when he was voluntarily transported to the police station).
 

 For the third interview, Joseph’s testimony at the suppression hearing about his participation in the interview conflicts with the testimony of the detectives. However, the trial court denied the motion to suppress and expressly concluded that Joseph was free to leave the interrogation at any time, he answered the questions voluntarily, and he was not in custody for
 
 Miranda
 
 purposes. Implicitly, the trial court concluded that the detectives’ testimony was more credible than Joseph’s testimony. Additionally, the recording of the interview reveals that the BSO detectives allowed Joseph to start the conversation, did not confront Joseph with evidence, and simply asked him to recount his version of the events. Therefore, the third interview was non-custodial. Accordingly, we find no abuse of discretion in the trial court’s denial of the motion to suppress.
 

 IN CAMERA REVIEW OF GRAND JURY TESTIMONY
 

 Joseph also argues that he is entitled to a new trial because the state affirmatively concealed that Pierre testified before the grand jury. However, under these circumstances, a
 
 Richardson
 
 inquiry was not the appropriate relief. Instead, Joseph should have resubmitted his previous request that the trial court review the grand jury testimony in camera to determine whether it should be disclosed. The true nature of defense counsel’s argument seems to raise the proper grounds; however, counsel initially objected on
 
 Richardson
 
 grounds, and the trial court limited its review to a
 
 Richardson
 
 inquiry. Because Joseph failed to secure a ruling on the true nature of his objection, the issue was not properly preserved for appellate review.
 
 See Aguirre-Jarquin v. State,
 
 9 So.3d 593, 604 (Fla.2009) (finding that the failure to secure a ruling on a request constitutes waiver on appeal),
 
 cert. denied
 
 , — U.S. -, 130 S.Ct. 1505, 176 L.Ed.2d 118 (2010).
 

 BURDEN SHIFTING DURING CLOSING ARGUMENT
 

 Joseph next claims that the trial court erred in denying his motions for mistrial when the prosecutor improperly shifted the burden of proof two times during closing argument. The court reviews the trial court’s denial of a motion for new trial or mistrial for an abuse of discretion.
 
 Dunlap v. State,
 
 21 So.3d 873, 876 (Fla.
 
 *312
 
 4th DCA 2009),
 
 review denied,
 
 33 So.3d 35 (Fla.2010). It is error for a prosecutor to invite the jury to convict a defendant for a reason other than the state proved its ease beyond a reasonable doubt.
 
 Gore v. State,
 
 719 So.2d 1197, 1200 (Fla.1998).
 

 Joseph first complains that, during closing, the prosecutor improperly stated, “[Defense counsel] wants you to believe that there are parts of his statement where Mr. Joseph says, oh, I didn’t know. I didn’t know it was a robbery. And if you believe he did not know it was a robbery, he is not guilty.” However, the prosecutor did not argue that Joseph had the burden of proving that he was not guilty. Instead, the prosecutor explained the defense’s theory and emphasized an element of the crime—Joseph’s intent to commit robbery.
 

 Joseph also alleges that the state made improper comments during its rebuttal closing. During trial, the state presented a ninety-second portion of the recording of Joseph’s third interview with BSO detectives. Prior to trial, Joseph objected to the admission of the entire recording. On cross-examination, defense counsel referred to portions of the footage not presented to the jury. During the defense’s closing argument, counsel asked the jury, “But if you heard more of that DVD, if you heard the whole thing, wouldn’t you see?” Upon the state’s request, the trial court read the jury a special instruction about the portion of the recording. Then, during rebuttal closing, the prosecutor said, Thereafter, Joseph moved for a mistrial because the state improperly shifted the burden of proof to the defendant. Although the prosecutor’s comments may have been burden-shifting, the comments were fair reply to defense counsel’s questions about what the state was hiding.
 
 See Joyner v. State,
 
 979 So.2d 1246, 1250 (Fla. 4th DCA 2008) (noting that “the defense may invite a burden-shifting comment by the state”). Accordingly, the trial court did not abuse its discretion by denying Joseph’s motions for mistrial.
 

 It is an entire DVD. I moved the entire thing into evidence. [Defense counsel] says, what’s the State hiding? Why don’t they show the whole thing? I said right there, I stipulate. When he asked Detective Berrena, wouldn’t it be best to see it in context? Detective Berrena said, yes. Yes. The whole thing. I said, I stipulate.
 

 PEREMPTORY CHALLENGE
 

 Finally, Joseph contends that the trial court erred in permitting the state to peremptorily strike prospective juror Nes-bitt, an African-American woman, on the alleged grounds that she nodded her head and may have spoken to another prospective juror, Shields, also an African-American woman. Joseph argues that the alleged grounds are facially race neutral, but lack record support and therefore cannot be used as a race-neutral ground for the strike. However, Nesbitt acknowledged on the record that she was nodding her head in response to Shields’ questioning, and the trial court found that Nesbitt acknowledged that she possibly spoke to another juror. Thus, the record supports that the state presented a race-neutral reason.
 

 Next, we consider the circumstances surrounding the strike in order to determine whether the race-neutral reason was pretextual or genuine.
 
 Murray v. State,
 
 3 So.3d 1108, 1120 (Fla.),
 
 cert. denied,
 
 - U.S. -, 130 S.Ct. 396, 175 L.Ed.2d 273 (2009). In
 
 Murray,
 
 the Florida Supreme Court explained, “ ‘Relevant circumstances may include—but are not limited to—the following: the racial makeup of the venire; prior strikes exercised against the same racial group; a strike
 
 *313
 
 based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment.’ ”
 
 Id.
 
 (quoting
 
 Melbourne v. State,
 
 679 So.2d 759, 764 n. 8 (Fla.1996)). In the instant case, the ultimate jury consisted of five African-Americans, five Caucasians, two Hispanics, and one Asian. The diversity of the ultimate jury in conjunction with the trial court’s extensive investigation of the issue and the improper communication between Nesbitt and Shields demonstrates that the state’s race-neutral reason was sufficiently genuine. Therefore, we find no error in the trial court’s granting of the state’s peremptory challenge of Nesbitt.
 

 Affirmed.
 

 CIKLIN and GERBER, JJ., concur.
 

 [1]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 .
 
 Richardson v. State,
 
 246 So.2d 771 (Fla. 1971).