WARNER, J.
Appellant, Steven Mark Siegel, appeals' his conviction for attempting to seduce a minor over the internet in violation of section 847.0185(3), Florida Statutes (2002). We reverse, because the trial court erred in disallowing Siegel’s peremptory challenge to two female jurors when defense counsel provided a genuine, gender-neutral reason for each challenge. In addition, the court erred in permitting the state to cross-examine Siegel regarding his prior counsel’s defense of him in another case, as Siegel did not “open the door” to this irrelevant evidence. Finally, we reject Siegel’s claim that he is entitled to additional discovery from the state regarding the computer hard drives used to save the alleged online communications that formed the basis for the charge against him.
Siegel was charged by information with one count of knowingly utilizing the internet to attempt to seduce, solicit, lure, or entice a child, or a person believed to be a child, to commit any illegal act relating to sexual battery, lewdness, or child abuse, in violation of section 847.0135(3), Florida Statutes (2002) over a period of nine months in 2003. The state alleged that Siegel engaged in multiple alleged internet communications with a Boynton Beach male detective posing as a 14-year-old girl. During those conversations starting in January of 2003, most of which were initiated by Siegel, he asked “Monica,” the online name used by the detective, about her age and sexual history and then engaged in a graphic sexual conversation with “Monica,” describing the sexual acts he wanted to perform with her. While they discussed meeting several times during this nine-month period, at no time did they agree to meet at a particular time and place. As the summer wore on, he told her that he wanted to talk to her more before meeting her. He never met her and discontinued conversations after October. Thereafter, the state filed charges against him.
Pursuant to section 90.404(2), Florida Statutes, the state filed a pre-trial notice of intent to offer evidence of similar crimes, wrongs, or acts. Specifically, the state sought to offer internet communications that arose from other investigations — one in Pennsylvania and one in St. Lucie County — in which Siegel engaged in internet communications with detectives posing as mothers of sexually active girls. The trial court overruled Siegel’s objections to the evidence, and both incidents were admitted at trial. Siegel was actually arrested in connection with the St. Lucie County incident, but the prosecutor dismissed the charges.
At trial, during jury selection Siegel sought to strike prospective juror Berman, a female school teacher. When the state asked for a gender-neutral reason for the strike of Ms. Berman, defense counsel stated that Siegel “would rather not have someone that has continued contact with children. She is a teacher.” The court ruled: “I find that is not a genuine strike and I disallow it.” Defense counsel added that Berman “said she goes to chat rooms, and I [would] rather have somebody that doesn’t go in chat rooms.” The court reaffirmed its ruling. Siegel also challenged another female teacher, and the court likewise found the reason to be pretextual.
When the selection of the jurors began, defense counsel again reiterated his challenge to the two teachers, which the court again disallowed. After stating again his objection to the selection process, the court decided to begin anew the jury selection process. Defense counsel again challenged Ms. Berman on the ground that she was a teacher who had contact with children. The state did not object, but the court nonetheless announced, “I disallow *285 that strike as it was challenged last time, and I found that [it] was ... not a genuine strike but actually a pretext based on the State’s request for a gender-neutral reason.”
Defense counsel also challenged Ms. Walker-Raines, a bank manager who had testified that she had a cousin in the Palm Beach County jail charged with a sexual crime — “a similar charge, not involving a computer crime.” When the state requested a gender-neutral reason, defense counsel explained that he did not want her on the jury because she “has a family member who is sitting with a sex crime in prison, and she has two family members with a sex crime.” The court disallowed the strike: “I find that is a pretext ... and not a genuine strike. She has one cousin who is in prison for a crime similar to that which your client is accused of.” Defense counsel stated, “It’s a sex crime.” However, the court responded: “And I deny the motion to strike her for peremptory. I find it is an effort, a pretextual effort to strike, so I disallow the strike on Walker-Raines.” Eventually, Siegel accepted the panel subject to his prior objections.
The state’s case consisted primarily of the testimony of the detective who carried on the online conversations as “Monica,” together with the Williams rule evidence of the Pennsylvania and St. Lucie County incidents. After moving for judgment of acquittal at trial, which the trial court denied, Siegel presented a “fantasy” defense that he did not believe he was really talking to a child. In particular, he testified at trial that he believed “Monica” was an adult posing as a 14-year-old because her persona often changed and it was unrealistic for a 14-year-old to say the things that “Monica” talked about during the chats. He likewise believed that he was actually online chatting with adults in both the Pennsylvania and St. Lucie County cases. As to the St. Lucie County case, he testified that it had been dismissed. Finally, he offered expert testimony that people create imaginary identities in online chat rooms for entertainment purposes.
On cross-examination, Siegel acknowledged making statements to the undercover detectives in Pennsylvania and St. Lucie County, including ones regarding wanting to have sex with the daughters of the “mothers” with whom he was communicating. However, with respect to the St. Lucie County prosecution, Siegel added: “[I]t’s obvious I didn’t do anything illegal because the charges once again were dismissed in this case.”
The prosecutor then asked, “Well, these charges were dismissed because you hired an attorney and you engaged in extensive motion practice with the State Attorney, right?” Defense counsel objected on relevancy grounds. The trial court ruled that by repeatedly stating that the charges were dropped in the St. Lucie County case, Siegel opened the door for the prosecutor to “bring in the rest of the story.” The prosecutor then got Siegel to acknowledge that he hired a “pretty good attorney” who took depositions, filed a motion to dismiss, filed a motion in limine, and filed a speedy trial demand, after which the state attorney dropped the charges. Siegel explained that he made the speedy trial demand because he believed the state had a weak case, the state attorney repeatedly asked for continuances, and he wanted a resolution of the case. In closing argument, the state again referenced the fact that Siegel hired an attorney to defend him against the St. Lucie County prosecution:
[STATE]: Now it’s true that the state attorney up in Fort Pierce dropped the charges against the defendant, and that was after the defendant hired an attorney. His attorney filed numerous mo *286 tions, took depositions, demanded speedy trial, but the fact remains the defendant did all of the things that you heard in this trial.
The jury convicted Siegel as charged, and the trial court sentenced him to five years of sex-offender probation. This appeal follows.
In his first, and dispositive, issue on appeal, Siegel argues that the trial court erred by denying his peremptory challenges to the two female jurors after he offered valid gender-neutral reasons for them. He claims that in both instances, the court failed to engage in the requisite genuineness analysis, and that even if the court did engage in an unstated analysis, the findings of pretext were clearly erroneous.
A trial court’s rulings on the propriety of peremptory challenges are reviewed under the abuse of discretion standard. See Franqui v. State, 699 So.2d 1332, 1334-35 (Fla.1997). In Melbourne v. State, 679 So.2d 759 (Fla.1996), our supreme court set forth a three-part procedure that must be followed whenever a peremptory strike is challenged as discriminatory. First, the objecting party must make a timely objection, show that the venire person is a member of a distinct protected group, and request that the court ask the striking party to provide a reason for the strike. Id. at 764. Second, the burden shifts to the proponent of the strike to come forward with a race-neutral or gender-neutral explanation. See id.; see also Welch v. State, 992 So.2d 206 (Fla.2008) (applying Melbourne to claims of gender-based discrimination). Third, if the explanation is facially race-neutral or gender-neutral, the court must determine whether the explanation is a pretext “given all the circumstances surrounding the strike.” Melbourne, 679 So.2d at 764. “The court’s focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.” Id.
Circumstances that are relevant to the “genuineness” inquiry may include, but are not limited to: the racial (or gender) make-up of the venire; prior strikes exercised against the same racial (or gender) group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment. Melbourne, 679 So.2d at 764 n. 8. Likewise, while the constitution does not require that the explanation be reasonable, reasonableness is one factor that a court may consider in assessing genuineness. Id. at n. 9. Because identifying the true nature of an attorney’s motive behind a peremptory strike turns primarily on a credibility determination, a trial judge’s ruling on the genuineness of a peremptory challenge will be affirmed on appeal unless clearly erroneous. Young v. State, 744 So.2d 1077, 1082 (Fla. 4th DCA 1999).
“There is nothing in Melbourne which requires trial judges to articulate their thought process on the issue of pretext.” Johnson v. State, 706 So.2d 401, 404 (Fla. 3d DCA 1998). But “where a gender or race neutral reason was advanced for the strike, the reason advanced is itself reasonable, and the record is devoid of any indication that the trial judge considered the relevant circumstances surrounding the strike in concluding that it was motivated by improper purposes,” an appellate court must conclude that the trial judge failed to adequately engage in the “genuineness inquiry” mandated by Melbourne. See Jones v. State, 787 So.2d 154, 157 (Fla. 4th DCA 2001). In Jones, we held that the trial court failed to engage in proper genuineness analysis where defense counsel offered a valid gender-neutral reason that the prospective female juror had served in a federal gun case resulting in a *287 guilty verdict, but the trial court merely stated: “[I] don’t think it’s a genuine strike. As far as I am concerned, she is as qualified as anyone else.” Id. at 155-57.
Here, as in Jones, the relevant colloquy between counsel and the trial court indicates that the court never really undertook a “genuineness” analysis, but simply stated that the reasons for the strikes were pretextual. As noted above, relevant circumstances that the trial court is to consider in determining the “genuineness” of a strike include the racial or gender make-up of the venire; prior strikes exercised against the same group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment. Melbourne, 679 So.2d at 764 n. 8. Nothing in the record suggests that consideration was given to any of these factors, many of which were relevant.
Even if the court engaged in an unstated analysis of the genuineness of the strikes, we find that it was clearly erroneous for the trial court to determine that the reasons for exercising a peremptory strike to jurors Berman and Walker-Raines were not genuine. When defense counsel sought to strike Ms. Berman, no prior strikes had been exercised against women. The reason stated for the strike — that juror Berman was a school teacher who had routine contact with children — was both gender-neutral and eminently reasonable in light of the nature of the charged crime. After the court restarted the jury selection process, the prosecutor did not even lodge an objection to the peremptory strike of juror Berman. Instead, the court simply sua sponte disallowed the challenge because the court had done so the first time around. Nothing in the record supported the court’s conclusion that Siegel was improperly attempting to keep Ms. Berman off the jury because of her gender.
Likewise, even if the court conducted an unstated genuineness analysis of the attempted strike of Ms. Walker-Raines, it was clearly erroneous for the trial court to determine that the reason for the strike was not genuine. Here, the defense sought to strike juror Walker-Raines because she had a relative charged with a sex crime. The fact that a juror has a relative who has been charged with a crime is a facially neutral reason for excusing that juror. Fotopoulos v. State, 608 So.2d 784, 788 (Fla.1992). The reason for defense counsel’s strike was not applicable to any other jurors, and there was no indication that the defense was singling out juror Walker-Raines. Although males comprised the majority of the venire, this was only the second attempted strike of a female juror after the court re-started the jury selection process. Quite simply, the record did not support the trial court’s conclusion that defense counsel’s reason for the strike was a pretext for keeping Ms. Walker-Raines off the jury because of her gender.
In sum, the relevant colloquy between defense counsel and the trial court indicates that the court never really undertook a “genuineness” analysis, and it was clearly erroneous for the court to determine that defense counsel’s stated reasons for the strikes were pretextual. We thus must reverse for a new trial.
Because we are reversing for a new trial, we also address the state’s cross-examination of Siegel regarding his legal representation in the St. Lucie County case. While the state contends that Siegel opened the door to the questions about his defense of the case when he testified that the dismissal of the charges meant that he did not do anything illegal in that case, we disagree.
*288 The trial court has broad discretion to make determinations regarding the scope of cross-examination, and its decisions regarding the admissibility of testimony are reviewed for an abuse of discretion. Graves v. State, 937 So.2d 1286, 1290 (Fla. 4th DCA 2006).
The evidentiary concept of “opening the door” allows the admission of otherwise inadmissible testimony to qualify, explain, or limit testimony or evidence previously admitted. Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000). This principle is premised on “considerations of fairness and the truth-seeking function of a trial.” Id. (internal quotations and citation omitted). In order to open the door, the witness must offer misleading testimony or make a specific factual assertion which the opposing party has the right to correct so that the jury will not be misled. Cullen v. State, 920 So.2d 1155, 1156 (Fla. 4th DCA 2006).
The mere fact that testimony may be characterized as incomplete or misleading, however, does not automatically trigger the admission of otherwise inadmissible evidence under the “opening the door” rule. Redd v. State, 49 So.3d 329, 333 (Fla. 1st DCA 2010). “Rather, the State must demonstrate a legitimate need to resort to such evidence to correct a false impression. Otherwise, the ‘opening the door’ rule threatens to become a pretext for the illegitimate use of inadmissible evidence, and the fairness-promoting purpose of the rule is lost.” Id. (citations omitted). Because fairness is clearly the focus of the rule, “the general unreliability of inadmissible evidence should be one of the court’s considerations in determining whether fairness requires admission.” Jordan v. State, 694 So.2d 708, 712 (Fla.1997) (internal quotations and citation omitted).
Here, Siegel’s testimony that the charges in the St. Lucie County case were dropped was irrelevant. As Professor Eh-rhardt has explained, the relevancy of similar-fact evidence “flows from the underlying act rather than the state or the judicial system having taken a particular action with respect to the charges.” Charles W. Ehrhardt, Florida Evidence, § 404.9 (2010); see also Holland v. State, 432 So.2d 60, 61 (Fla. 1st DCA 1983) (holding that trial court did not err in denying the defendant’s request to inform the jury that the Williams rule offense had been nolle prossed), approved, 466 So.2d 207 (Fla.1985). Thus, the prosecutor could have, and should have, moved to strike Siegel’s testimony when he volunteered that he did not do anything illegal because the charges in the St. Lucie County case were dismissed.
While Siegel’s testimony was irrelevant, it is not clear that this testimony was misleading or incomplete. Siegel’s testimony that the charges against him in the St. Lucie County case were nolle prossed was factually accurate. Even if we were to assume that Siegel gave misleading testimony regarding the dismissal of the charges in St. Lucie County and his belief that he did nothing illegal, the state did not have a legitimate need to resort to cross-examining Siegel in depth regarding the tactics of his legal defense of the St. Lucie County prosecution. Siegel’s testimony was not so misleading or incomplete as to open the door to the prosecutor’s prejudicial cross-examination of Siegel regarding every legal maneuver his attorney took in the defense of the St. Lucie County prosecution. The obvious purpose of this line of questioning was to suggest to the jury that Siegel escaped justice in the St. Lucie County case through his attorney’s legal machinations. This is highly offensive to the constitutional right of counsel *289 guaranteed by the Sixth Amendment and should never have been allowed. Even without the error in jury selection, we would have reversed on this issue, as we could not consider it harmless beyond a reasonable doubt. On re-trial neither side should refer to the dismissal of the St. Lucie County charges.
Finally, we address the trial court’s denial of Siegel’s motion to inspect the hard drive of the Boynton Beach computer to review the online chats. Before trial, Siegel also moved to compel production of the hard drives used to record the communications in the Boynton Beach case and the communications involved in the similar-act investigations. Siegel argued that inspecting the hard drives was critical to verify the accuracy of the printouts of the conversations provided by the state and check the dates of the communications. The prosecutor opposed the motion, arguing that inspection of the Boynton Beach hard drive would endanger ongoing investigations by revealing confidential information also contained on the hard drive. The state’s forensic expert likewise testified that inspection of the hard drives could endanger other investigations. The defense offered to agree to necessary security precautions, but none were specifically identified. The court ruled that the state did not have to produce the drives themselves, but had to produce: “if it can be obtained or retrieved: the dates of the chats and the IP address of the computer that the chats or messages were received from.”
Siegel argues that the trial court abused its discretion in denying his motion to compel production of the Boynton Beach hard drive, claiming that the drive was material to his defense and required by the interests of justice. The state responds that the court received expert testimony that the production of the drive would jeopardize other investigations, and that Siegel did not make a material showing that the hard drive contained exculpatory evidence.
Florida Rule of Criminal Procedure 3.220(f) authorizes a court to “require such other discovery to the parties as justice may require” upon “a showing of materiality.” Fla. R.Crim. P. 3.220(f). “In the discovery context, material means reasonably calculated to lead to admissible evidence.” Franklin v. State, 975 So.2d 1188, 1190 (Fla. 1st DCA 2008). “[T]he very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.” State v. Gonsalves, 661 So.2d 1281, 1282 (Fla. 4th DCA 1995). Nevertheless, the rule also provides for the issuance of protective orders to exempt matters from discovery “on a showing of good cause.” Fla. R.Crim. P. 3.220(1).
The prosecutor provided to the defense copies of the online chat room statements, thus fulfilling its duty pursuant to rule 3.220(b). The defense seeks the underlying computer data of those statements, but the prosecution claims that permitting inspection would compromise other investigations whose data is also on the computer. An adequate and secure method for securing such communications was not proposed. There is no evidence that material information has been withheld,[1] as the prosecutor delivered to the *290 defense the transcripts of the statements. The trial court is invested with discretion to determine whether good cause to limit or deny discovery, and based upon this record we cannot conclude that the court abused its discretion.
We affirm all of the remaining issues raised by Siegel. Because of the reversal on the issues addressed in this opinion, we remand for a new trial.
POLEN and LEVINE, JJ., concur.

. Siegel argues that he did show that the data was material in that he claimed that the transcripts were not complete, in light of certain issues pertaining to the accuracy of the chats (e.g., the fact that there was a gap, one of the chats contained an incorrect timing sequence, there were different dates listed for the same chat in one instance, and there were formatting inconsistencies). However, our reading of the officer’s testimony is that these were *290 cut-and-paste errors when he copied the chats from the chat window into a Word document. This testimony is insufficient to show that the data itself was materially altered.