GERBER, J.
The defendant appeals his convictions for sexual battery on a person less than twelve years of age, lewd and lascivious molestation, and providing obscene material to a minor. He raises several arguments, three of which have merit: (1) the trial court erred in not finding that the state opened the door to certain cross-examination questions; (2) the trial court erred in not allowing impeachment of the child’s testimony; and (3) the trial court erred in overruling his objection to a portion of the state’s closing argument. We address these three arguments in turn.

Opening the Door

The child’s mother read statements in the child’s notebook which prompted the mother to contact the police about the defendant. During the state’s case-in-chief, the state played for the jury an audiotape containing a series of controlled calls between the mother and the defendant involving the notebook. On the first call, the mother told the defendant: “I found a notebook and I just want to make sure, I don’t think these are true some of the stuff I was reading, and maybe she doesn’t have the story right.” The defendant told the mother he would call her back.
On a later call, the mother again referred to the notebook, prompting the following exchange:
Mother: ... [A]m I reading too much into this? ... This is what I think happened. [The child] walked into your house [and] you were watching porn, maybe you’re a little embarrassed, I don’t care but I’m going to be [angry] at her for walking into your house when — I think [the child] walked right into your house and [you] were watching [a] porno movie and you were embarrassed, and that’s what I think exactly happened, but I want to hear from you exactly what happened. If that’s the case, I know I raised [the child] better than that, is that what [the child] did, just walked right in your house?
Defendant: That’s right.
*66 [[Image here]]
Mother: ... Then I know there was something else [the child] wrote about. She wrote about something too about kissing somebody, but I understand if that’s the case that it happened, I’ll punish [the child] for that, but the other thing she said something about kissing, I think all she did, all she was referring to ... is her and her friend was trying to outdo each other, I seen her hugging you and your wife, she likes you guys, I think that’s what she had seen, maybe you had kissed her on the cheek ... maybe that’s what she’s referring to; could that be?
Defendant: That’s it.
[[Image here]]
Mother: All right, then I’ll deal with [the child] writing stuff like that, because I don’t want you to get into trouble for something you didn’t do, this is— this can hurt somebody, okay, I’ll talk with [the child].
After the state played these calls, the defendant requested the trial court’s permission to cross-examine the mother on the notebook’s contents. The defendant proffered the notebook’s contents:
I, in a public pizza after drinking a soda, was a famous radio announcer, and I know a — me and tried to do, I am a year old boy in — I’ve a — I’ve got an — on a — I never showed my mom I was in two grade. I also got one in three grade. I — a—and made him, the same guy got big plants, so he could hide one chair and do nasty things. He showed me, he kissed me and forced me to kiss his blank ER and shoved his hand down my pants.
The guy got Chinese while his wife was in Canada, and put a sleeping pill in my Pepsi and gave it to my aunt. One time at school my mom dropped me of with $20 for picture money, and I flunked school, and I went to the movie and Publix.
The defendant requested the trial court’s permission before proceeding because the court, earlier in the trial, had ruled that the notebook’s contents were irrelevant and hearsay. Following the playing of the calls, however, the defendant argued, “I think it’s relevant that portions come in now ... the jury’s left with the impression that [the child] had a notebook that addressed only [the defendant], that’s not true.” The court ruled that it would allow the defendant to ask the mother if there was anything in the notebook which named the defendant, “[b]ut you can’t ask her ... what was in the notebook based on my prior ruling.”
The defendant argues that the trial court erred in not finding that the state opened the door to allowing him to cross-examine the mother about the notebook’s contents. The state argues that any error was harmless because the court allowed the defendant to elicit from the mother that the notebook did not refer to him by name.
The standard of review of a determination of whether a party has opened the door is abuse of discretion as limited by the rules of evidence. Shermer v. State, 16 So.3d 261, 265 (Fla. 4th DCA 2009) (citation omitted). As we recently stated in Siegel v. State, 68 So.3d 281 (Fla. 4th DCA 2011):
The evidentiary concept of “opening the door” allows the admission of otherwise inadmissible testimony to qualify, explain, or limit testimony or evidence previously admitted. This principle is premised on considerations of fairness and the truth-seeking function of a trial. In order to open the door, the witness must offer misleading testimony or make a specific factual assertion which *67 the opposing party has the right to correct so that the jury will not be misled.
Id. at 288 (citations and other internal quotations omitted).
Applying those standards here, we conclude the trial court erred in not finding that the state opened the door to allowing the defendant to cross-examine the mother about the notebook’s contents. The mother’s comments during the calls would have left a reasonable juror with the impression that the notebook referred to the defendant. This impression likely would not have been alleviated by the mother’s testimony that the notebook did not refer to the defendant by name. After all, it was the mother’s reading of the notebook which prompted her to contact the police about the defendant in the first place. Further, the mother’s comment on the first controlled call about “some of the stuff I was reading” may have left a reasonable juror with the impression that the child wrote more statements in the notebook other than those which the mother mentioned in the calls. However, the defendant was not given an opportunity to clarify or impeach the mother’s characterization of the notebook’s contents or to present to the jury the manner in which the child wrote the statements.
The state has not proven this error to be harmless. See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986) (“The harmless error test ... places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.”). Once the state mentioned the notebook’s existence through the introduction of the controlled calls, a reasonable juror would have found the notebook’s contents to be very significant. That is because, by the time the child testified, several months had passed, during which the child had discussed the matter with at least four adults — her mother, the investigating detective, the child protection team investigator, and the prosecutor. The notebook, however, was written contemporaneously and without the possibility of outside influence. Yet the jurors were left to speculate as to its contents rather than being allowed to see this key piece of evidence for themselves. Thus, a reasonable possibility exists that allowing the jury to speculate as to the notebook’s contents contributed to the conviction. This error, by itself, is sufficient to require reversal for a new trial.
We now address two other errors which, by themselves, may not have been sufficient to require reversal for a new trial. However, we address them to preclude their repetition at the new trial.

Impeachment

The defendant lived in the same apartment building as the child’s aunt. During the state’s case-in-chief, the child testified on cross-examination of having told her aunt that the defendant had “touched her.” During the defendant’s case-in-chief, the defendant called the aunt as a witness. Before beginning direct examination, the defendant requested that he be able to impeach the child’s testimony by asking the aunt whether the child ever said anything to her about being abused. In support of this request, the defendant represented that the aunt testified at deposition that the child never complained to her of sexual or physical abuse. The trial court denied the request, finding that such evidence would constitute impeachment on a collateral matter.
The defendant argues that this evidence was not a collateral matter but went to the heart of his defense that the child fabricated the allegations. The state conclusorily *68 responds that the trial court did not abuse its discretion in finding the testimony inadmissible.
The standard of review for a refusal to permit impeachment on the ground that the impeachment involved a collateral matter is abuse of discretion as limited by the rules of evidence. Ocasio v. State, 994 So.2d 1258, 1261 (Fla. 4th DCA 2008) (citation omitted). Section 90.608(5), Florida Statutes (2009), provides that “[a]ny party ... may attack the credibility of a witness by ... [p]roof by other witnesses that material facts are not as testified to by the witness being impeached.” (emphasis added).
Applying those standards here, we conclude the trial court erred in not allowing this impeachment. Although the child’s alleged act of speaking to her aunt was not material, the content of that alleged speech was material. The child testified she told her aunt that the defendant had “touched her.” That statement summed up two of the three charges for which the defendant was on trial. Thus, allowing the defendant to ask the aunt whether the child ever said anything to her about being abused would not have constituted impeachment on a collateral matter.

Closing Argument

During closing argument, after applying the evidence to the elements of each charge, the state told the jury that “in order to find the defendant not guilty you would have to discredit — ”, at which point the defendant objected with “[i]m-proper argument.” At sidebar, the court requested the state to complete the sentence it was telling the jury. The state responded, “You would have to discredit what [the child] testified, what information was provided during [the child’s] testimony.” The defendant replied that such an argument would be improper because “[the jury has] to decide whether or not the State proved [its] case beyond a reasonable doubt.... [I]t’s not whether or not a witness is telling the truth or lying or not.” The court overruled the objection at sidebar. Despite the favorable ruling, the state did not finish the sentence in front of the jury. Instead, the state rephrased its argument: “[I]f you find that [the child’s] testimony was credible, if you have an abiding conviction of guilt, you must find the defendant guilty.” During the state’s rebuttal argument, the state told the jury “this boils down to, do you believe [the child].” The state then summarized the child’s testimony again and ended with “[D]o you believe that? If you do, the State’s proven its case.” The defendant objected. The trial court overruled the objection.
The defendant moved for a mistrial shortly thereafter. The defendant argued that the state’s comments improperly shifted the burden of proof to him because the comments insinuated he needed to prove that the child was lying in order to be found not guilty. The trial court denied the motion. The court found that the state rephrased its initial comment and made its later comments in the context of instructing the jury to weigh the evidence and decide whether the state proved every element of its case.
The defendant argues that the trial coui't erred in overruling his objection to the state’s initial comment and in denying his motion for mistrial. The defendant maintains that the state’s comments regarding the child’s credibility improperly shifted the burden of proof to him. The state responds that its comments, when read in context with the rest of the argument, were proper because it simply was informing the jury to weigh the child’s credibility and decide whether the state proved every element of its case.
*69 We review the trial court’s rulings for an abuse of discretion. See Wicklow v. State, 43 So.3d 85, 87 (Fla. 4th DCA 2010) (“Improper prosecutorial closing argument is reviewed under an abuse of discretion standard.”); Joseph v. State, 41 So.3d 307, 311 (Fla. 4th DCA 2010) (a trial court’s denial of a motion for mistrial based on an argument that the state improperly shifted the burden of proof during closing argument is reviewed for an abuse of discretion).
Applying the foregoing standard, we conclude that the trial court erred in overruling the defendant’s objection to the state’s initial comment. It would have been improper for the state to comment “in order to find the defendant not guilty, you would have to discredit the child’s testimony.” See Northard v. State, 675 So.2d 652, 653 (Fla. 4th DCA 1996) (impermissible for state to argue “in order to find him not guilty you’re going to have to believe that the defendant was telling the truth and the officer was lying” because it misstates the burden of proof).
However, the trial court did not err in denying the motion for mistrial. The state did not complete the improper comment before the defendant objected at the word “discredit.” Moreover, despite the court overruling the objection at sidebar, the state did not complete the improper comment to the jury. Instead, the state rephrased its argument to suggest that the child’s testimony was credible and that the child’s credible testimony proved the elements of its case. All of this came after the state applied the evidence to the elements of each charge. This course of events rendered harmless the court’s error in overruling the defendant’s objection to the state’s improper comment. See Covington v. State, 842 So.2d 170, 173-74 (Fla. 3d DCA 2003) (trial court’s error in overruling prosecutor’s closing argument, that issue came down to whether the jurors believed the police officer or a defense witness, was harmless where the court overruled the objection at sidebar, but the prosecutor then made a correct statement that the officer’s testimony was sufficient for the state to carry its burden of proof). While the state could have more artfully argued that the child’s testimony proved the elements of each charge, we conclude that the state’s comments, in the context of the entire closing argument and the entire trial, were not so “prejudicial and fundamental that it denie[d] the accused a fair trial.” Dunlap v. State, 21 So.3d 873, 876 (Fla. 4th DCA 2009) (citation omitted).
Based on the foregoing conclusions for which reversal was required, however, we remand for a new trial. For the trial court’s and the parties’ guidance in the new trial, we conclude that the other arguments which the defendant has raised in this appeal, but which we have not addressed in this opinion, are without merit.

Reversed and remanded for a new trial.

CIKLIN and CONNER, JJ., concur.