WARNER, J.
The Estate of Kim Douglas appeals a final judgment in a personal injury action in favor of the defendant, Robert Al-bright.[1] It claims that the court erred in allowing the defendant to question Douglas on a prior unrelated litigation settlement. The trial court allowed inquiry into the settlement because Douglas had opened the door to such questioning by claiming that she did not have the resources to continue medical treatment for her injuries in the accident on which this suit is based. We agree with the trial court that the defense could question Douglas on the settlement as it was not being offered to prove litigiousness but to counter her own testimony regarding her lack of funds to seek medical treatment. We affirm as to this issue, as well as to the remaining issues in the case, but do so without prejudice to the estate raising a motion for relief from judgment based on a claim of fraud on the court with respect to the alteration of a surveillance video.
This case arises out of a car collision which occurred in March of 2001. At the trial, defendant Robert Albright testified that his car was bumped from the side by another vehicle, and his vehicle was pushed into the rear end of Kim Douglas’s vehicle in stop-and-go traffic. Albright testified that he never left his lane prior to any impact. The defense offered photographs of the slight damage done in the accident to all three vehicles, including Douglas’s. Albright testified that Douglas said she was okay after the accident, left almost immediately, and did not appear to be in pain. Douglas was not taken to the emergency room after the accident, and she drove herself home.
Douglas alleged that she had a strain/ sprain injury to her neck and back and that she suffered herniated discs as a result of the accident. She testified that she saw a chiropractor, Dr. Grassi, the day after the accident and went back to him in a couple of months. She complained of neck pain, arm pain, blurred vision, headaches, and numbness. Dr. Grassi recommended physical therapy, but Douglas only sporadically made appointments to get therapy and then quit because the therapy made her feel worse. An MRI taken several months after the accident showed bulging discs in her cervical spine but no herniation. She saw an orthopedic surgeon ten months after the accident and complained of radiating pain. She also saw a neurologist who performed various tests, all of which had results within normal limits. He, too, recommended physical therapy, which Douglas did not have.
Two and a half years after the accident, in November 2003, she saw a neurosurgeon who ordered another MRI which now showed herniated cervical discs. He recommended a cervical discetomy. She did not have the surgery until 2008. In the meantime, she was seen and treated by two pain management doctors and prescribed multiple drugs to alleviate pain. This went on for several years, and she testified that at the time of trial she was spending up to $1,700 per month on pain *39 medications. She testified that she could not afford to go to more than one doctor, and she was not ready for surgery. At other times in her testimony, she said she didn’t have enough money to obtain treatment or drugs.
At the beginning of trial, the defense counsel advised the court that Douglas may try to explain her sporadic medical care by claiming financial inability to afford treatment. The defense requested that if she injected financial status into the case, then the defense should be permitted to bring out the fact that she had recovered a large monetary settlement in an unrelated case less than a year before the accident. The trial court agreed and explained that “if money gets raised then once it’s thrown down on the floor then you get to bring up any [rebuttal] information you have about money, lack of money.”
When Douglas raised her lack of funds to seek medical treatment or surgery, defense counsel then sought to question her about the settlement she obtained shortly before the accident in this ease. Plaintiff objected on the grounds that it would show litigiousness of the plaintiff and that it would be overly prejudicial. The trial court overruled the objection, and defense counsel asked Douglas whether she had received a settlement of a lawsuit in the amount of $420,000. She admitted she had; however, after paying her attorney, purchasing a house, and trying to reestablish herself and her children after a divorce, she had used up all of the money.
The defense took the position that Douglas had not sustained a permanent injury from the accident and had only sporadic treatment for her injuries. The defense medical expert testified that Douglas suffered a strain, but not a herniation, in the accident. The doctor was of the opinion that a degenerative condition unrelated to the accident necessitated the neck surgery. The defense also offered into evidence a surveillance video of Douglas which showed her bending, squatting down to look at the tire of her car, pulling an air hose to put air in her tires, and carrying packages. The doctor viewed the surveillance film and testified that it showed Douglas performing motions that she would not do in his office. He testified that the video was inconsistent with someone in pain. He did not believe she sustained a permanent injury.
The jury returned a verdict in which it answered “no” to the question, “Did the defendant, Robert Albright, negligently operate the motor vehicle he was driving and, if so, was such negligence a legal cause of loss, injury or damage sustained by the plaintiff, Kim Douglas?” The court entered final judgment on the verdict.
After the verdict, Douglas filed a motion for sanctions and new trial in which she contended that she had the surveillance video examined by a forensic expert who was of the opinion that the video had been edited. She also raised other claims in the motion for new trial. The trial court denied the motion for new trial without a hearing. Douglas now appeals.
Douglas claims that the trial court erred in allowing the defense to question her about her prior settlement, claiming that it showed prior litigiousness, which is prejudicial and inadmissible, citing Zabner v. Howard Johnson’s Inc. of Florida, 227 So.2d 543, 546 (Fla. 4th DCA 1969). Zabner, however, is inapposite to the facts of this case. In Zabner, a plaintiff sued for personal injuries sustained when her gum was pierced by a walnut shell concealed in ice cream. The defense sought to impeach her by interrogating her on the fifteen prior lawsuits she had brought, some for personal injuries unrelated to the present *40 claim and some for commercial matters. Our court determined that bringing out prior litigation history simply to prove a plaintiffs litigiousness was a character attack and had no other purpose than to prejudice the jury. We recognized, nevertheless, that under some circumstances prior litigation was the proper subject of cross-examination, such as when the plaintiffs physical condition may be affected by prior injuries, which were the subject of prior lawsuits. Thus, where the issue was relevant for a purpose other than impeachment as to litigiousness, the trial court did not necessarily abuse its discretion in admitting such evidence.
“[Ajdmission or rejection of impeaching testimony is within the sound discretion of the trial court.” Winner v. Sharp, 43 So.2d 634, 635 (Fla.1950). Here, the trial court had considered the issue prior to the commencement of trial. The trial court notified both counsel that if Douglas put her financial resources at issue, then the defense could raise the settlement. As expected, Douglas did raise her resources as a reason she could not get treatment, and the trial court allowed the defense counsel to question her on the amount of the settlement and how it was spent. Counsel did not introduce it to prove litigiousness, and Zabner does not control this case.
The defendants contend that Douglas opened the door to the testimony of her financial status by repeatedly testifying that her sporadic medical treatment was due to her inability to pay. The concept of opening the door allows admission of otherwise inadmissible testimony to explain or limit evidence previously admitted. Siegel v. State, 68 So.3d 281, 288 (Fla. 4th DCA 2011) (citing Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000)). Sossa v. Newman, 647 So.2d 1018 (Fla. 4th DCA 1994), is instructive and presents the flip-side of the facts in this case. There, the defendants stressed throughout trial that the plaintiff never returned to any of her doctors, which suggested that she hadn’t been hurt in the accident, otherwise, she would have continued medical treatment. In ruling that the court erred in denying plaintiffs evidence of inability to pay for treatment, we held that the defendants opened the door to issues of the plaintiffs financial ability to continue treatment. Under those circumstances, the trial court should have allowed the plaintiff to elicit testimony that she didn’t return to doctors because of the family’s financial inability to pay for treatment. Similarly, in this case, where Douglas claimed that she did not have the resources to pay for treatment, we do not find that it was an abuse of discretion for the trial court to allow the defense to question Douglas as to funds that she may have had available from her earlier substantial recovery.
Commendably, and consistent with his ethical responsibilities, in appellee Al-bright’s answer brief, counsel points out Leslie v. Higgason, 779 So.2d 470 (Fla. 2d DCA 2000), which at first blush seems to suggest that the evidence of the amount of a prior settlement is inadmissible as impeachment where the plaintiff claims inability to pay for surgery from the current accident. There, Mrs. Leslie brought a personal injury action against Higgason, alleging that Leslie had sustained permanent injuries in an auto accident in 1996 which aggravated injuries she had sustained in an earlier accident in 1988. Leslie’s husband testified he couldn’t afford surgery for her. On cross-examination, the defense asked Mr. Leslie about his settlement from an auto accident eight years earlier and he admitted his wife was paid $65,000. In reversing the final judgment for the defendant, the Second District ruled that Leslie’s previous injury *41 was relevant, but the settlement amount from the previous injury was irrelevant and was improperly emphasized in closing argument. The court relied on out-of-state cases which held that settlement amounts from prior personal injury suits which involve aggravation of the prior injuries were inadmissible as it could lead the jury to think that the plaintiff was seeking a double recovery. In this case, however, it was made clear that the earlier case was not a personal injury case but was a recovery of an entirely different type of lawsuit. The jury was not given the impression that Douglas was obtaining a double recovery for her injury.
The trial court did not abuse its discretion in allowing admission of the prior settlement amount in this case. The defendants did not raise it to show prior litigiousness but to impeach the plaintiff on a material issue in the case.
We reject Douglas’s claim that she was entitled to a new trial based upon a defense attorney’s question to Douglas as to whether a person she visited was a disbarred attorney, seemingly asked to discredit Douglas’s character. Douglas never objected to the question. Instead, the trial court immediately called a sidebar and in no uncertain terms castigated counsel for even asking the question. Not only did Douglas not object, she asked for no curative instruction, nor did she ask for a mistrial. Thus, the issue was not preserved. See Companioni v. City of Tampa, 51 So.3d 452, 456 (Fla.2010).
Finally, in her motion for new trial and on appeal Douglas claims that the surveillance tape of her was surreptitiously edited, perpetrating a fraud on the court. The trial court denied the motion without a hearing. In the trial court, Douglas filed an affidavit in which an expert swore that the surveillance tape had been edited, contrary to the representation of the surveillance investigator. While we affirm the final judgment, we do so without prejudice to Douglas’s estate filing an appropriate Rule 1.540 motion for relief from judgment, as it appears that the affidavit raises an issue requiring an evidentiary hearing.

Affirmed.

GROSS, J., and STONE, BARRY J., Senior Judge, concur.

. During the pendency of this appeal, Kim Douglas, the plaintiff in the action, died of causes unrelated to this action. Her estate was substituted as a party. The appeal is not moot because of the survival statute. See § 46.021, Fla. Stat. (2005).